

**07-CV-00411-CJA**

# EXHIBIT Q

Dockets.Justia.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CAROL BROWN, individually and on behalf
of all others similarly situated

Plaintiff,

**CA** 07 115 ML

vs.

C.A. No. _____

MENU FOODS, INC.,
MENU FOODS INCOME FUND,
MENU FOODS MIDWEST CORPORATION,
MENU FOODS SOUTH DAKOTA, INC.

Defendants.

## CLASS ACTION COMPLAINT

Plaintiff Carol Brown (hereinafter "Plaintiff") brings this class action complaint

against defendant Menu Foods, Inc., Menu Foods Income Fund, Menu Foods Midwest

Corporation, Menu Foods South Dakota, Inc, (hereinafter collectively "Menu Foods"

or "Defendants") to seek redress for herself and all other individuals injured by

defendant's sale of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.     Defendants, one of the largest pet food manufacturers in the world,

whose products are sold under numerous brand names by several national chain stores

throughout the United States, recently issued a massive recall of over 90 brands of cat

and dog food (hereinafter "Product").

2.    The recall was issued as a result of evidence that the dog and cat food which the defendants produced has caused an unknown number of cats and dogs to become ill and or has caused renal failure and death.

3.    When ingested by an animal, the contaminated pet food can cause immediate renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its death..

4.    Defendants', actions in selling the contaminated food and failing to issue the recall sooner were reckless and in breach its duties and warranties to its customers.

5.    Those actions were a proximate cause of injury to and the deaths of currently untold numbers of cats and dogs.

## PARTIES

6.    Plaintiff Carol Brown is a citizen of Johnston, Rhode Island.

7.    Defendant, Menu Foods is a New Jersey Corporation.

8.    Defendant, Menu Foods Income Fund is an unincorporated company with its principal place of business in Ontario, Canada.

9.    Defendant, Menu Foods Midwest Corporation is a Delaware corporation.

10.    Defendant, Menu Foods South Dakota, Inc. is a Delaware corporation.

## JURISDICTION

11.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. 1332(d) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Menu Foods is a citizen, (b) the

2

.amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c)
none of the jurisdictional contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant
action.

## VENUE

12.   Venue is proper in this district under exceptions, inter alia, 28 U.S.C.
§§ 1391 (a)(1).

## FACTS

13.   Defendants holds themselves out to the public as a manufacturer of
safe, nutritious, and high-quality dog and cat food.

14.   Defendants make numerous express warranties about the quality of its
food and its manufacturing facilities.

15.   For example, Defendants tout the claim that it "manufacture[s] the
private-label, wet pet-food industry's most comprehensive product program with the
highest standards of quality" and it operates "state-of-the-art" manufacturing facilities
in the United States and Canada.

16.   Defendants intended for pet owners to believe its statements and trust
that its pet food is of first-rate quality.

17.   On or about March 16, 2007, Defendants announced a recall of
approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and
gravy" style cat food, all produced at Defendants' facility in Emporia, Kansas,
between Dec. 3, 2006, and March 6, 2007.

18.   Weeks before the recall, Defendants had received numerous complaints
indicating that the pet food originating from the Emporia plant was killing pets.

3

19.     As a result of these complaints, Defendants tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

20.     Despite having actual knowledge of both the complaints it received and its own study, Defendants delayed for weeks before issuing the notice of recall.

## FACTS RELATING TO THE NAMED PLAINTIFF

21.     On or about December 5, 2006, Plaintiff Carol Brown purchased Nutro Max from the retailer, Petco for her Shih Tzu breed dog named Bro Hammer.

22.     Plaintiff's dog, Bro Hammer died on January 5, 2007 as a direct result of the ingestion of Nutro Max manufactured in the United States by Defendants.

## CLASS ALLEGATIONS

23.     Plaintiff Carol Brown brings this action, pursuant to FRCP 23(h)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

24.     Upon information and belief, there are over tens of thousands of members of the Class such that joinder of all members is impracticable.

25.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

    a.      Did Defendants act negligently in failing to prevent the contamination of its pet food?

    b.      Did Defendants act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

4

c.     Did Defendants' breach express and/or implied warranties relating to the sale of its pet food?

d.     Did Defendants act negligently in manufacturing or processing the pet food products?

e.     Did Defendants' negligence cause loss or injury or damages?

26.     Plaintiff will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

27.     A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions

## LEGAL CLAIMS

## COUNT I

## BREACH OF EXPRESS WARRANTIES

28.     Plaintiff repeats and incorporates herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action

29.     Defendants expressly warranted that the Product was safe and well accepted by dogs and cats and was safe for long-term use.

30.     The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

31.    As a direct and proximate result of the breach of said warranties,

Plaintiff was damaged and she is therefore entitled to damages.

## COUNT II

## BREACH OF IMPLIED WARRANTIES

32.    Plaintiff repeats and incorporates herein by reference each and every
paragraph of this complaint as though set forth in full in this cause of action

33.    Defendants breached the implied warranty of fitness for a particular
purpose by claiming certain of the pet food that it manufactured or produced and was
recalled were fit and safe for consumption by pets and thereby violated the Uniform
Commercial Code.

34.    Defendants breached the implied warranty of merchantability. In fact,
the pet food subject to recall and purchased or used by Plaintiff, the Class, and others
was not merchantable. This breach violated the Uniform Commercial Code.

35.    As a direct and proximate result of the breach of said warranties,
Plaintiff was damaged and she is therefore entitled to damages.

## COUNT III

## STRICT PRODUCT LIABILITY - FAILURE TO WARN

36.    Plaintiff repeats and incorporates by reference each and every
paragraph of this complaint as though set forth in full in this cause of action.

37.    Defendants manufactured, marketed, distributed, and supplied

6

Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

38. Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

39. Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

## COUNT IV

## STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

40. Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

41. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiff's pets.

42. Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

7

43.     The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

44.     Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

45.     At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

46.     As a direct and proximate result of the defective and unreasonably dangerous condition of the Product Plaintiff suffered damages.

## COUNT V

## NEGLIGENCE

47.     Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

48.     Defendants owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

49.     Defendants breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

50.     Defendants further breached this duty by failing timely and effectively to warn plaintiff and the class of the contamination even after it had actual knowledge

8

of that fact and of the resulting risks.

51.    As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food.

## COUNT VI

### UNJUST ENRICHMENT

52.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

53.    Defendants were and continue to be unjustly enriched at the expense of Carol Brown and other Class members.

54.    Defendants should be required to disgorge this unjust enrichment.

## COUNT VII

### BREACH OF CONTRACT

55.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

56.    Plaintiff and Class members purchased pet food produced by the Defendants based on the understanding that the food was safe for their pets to consume.

57.    The pet food produced by the defendants was not safe for pets to consume and caused dogs and cats to become ill. The unsafe nature of the pet food constituted a breach of contract.

58.    As a result of the breach Plaintiffs and Class members suffered

9

damages which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An award of actual damages;

3. Appropriate injunctive relief;

4. Medical monitoring damages;

5. Reasonable attorney's fees and costs; and

6. Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: ___3/27/07___

Carol Brown, individually and on behalf
of a class of similarly situated individuals.

Respectfully submitted,

By: _____

Peter N. Wasylyk (RI Bar # 3351)
**Law Offices of Peter N Wasylyk**
1307 Chalkstone Ave.
Providence, RI 02908
(401) 831-7730 tel
(401) 861-6064 fax

Andrew S. Kierstead
**Law Office of Andrew S. Kierstead**
1001 SW Fifth Ave., Suite 1100
Portland, OR 97204
(508) 224-6246 tel
(508) 224-4356 fax

Marc Stanley
**Stanley, Mandel & Iola, L.L.P.**
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
(214) 443-4300 tel
(214) 443-0358 fax

**Counsel for Plaintiff**

# EXHIBIT R

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Lauri A. Osborne, Individually and On Behalf )    No.   3 0 7 c v 4 6 9 ( R N C )
of All Others Similarly Situated, )
                 Plaintiff, )    **307CV00469** **RNC**
           )    CLASS ACTION
       vs. )
MENU FOODS, INC. )    DEMAND FOR JURY TRIAL
               Defendant. )
           )

## CLASS ACTION COMPLAINT

Plaintiff Lauri A. Osborne brings this class action complaint against Menu Foods, Inc.

("Menu Foods") to seek redress for herself and other individuals injured by its sale of

contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.     Menu Foods, one of the largest pet food manufacturers in the world,

recently issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.     That recall was issued belatedly as a result of evidence that the pet

food in question was contaminated with a potentially lethal agent.

3.     When ingested by an animal, the contaminated pet food can cause

immediate renal failure, resulting in complete shutdown of the animal's kidneys and, ultimately

its death.

4.     Menu Foods' actions in selling the contaminated food and failing to issue the

recall sooner were reckless and in breach of its duties and warranties to its customers.

5.    Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Lauri A. Osborne's cats, as described more fully below.

6.    On behalf of a nationwide class, Lauri A. Osborne seeks redress for that misconduct.

## PARTIES

7.    Plaintiff Lauri A. Osborne is a citizen of Connecticut, residing in Terryville, Litchfield County, CT.

8.    Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principal place of business in New Jersey. It does business throughout the United States and throughout Connecticut. It also has offices in Ontario, Canada.

## JURISDICTION

9.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332 (a) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Menu Foods is a citizen; (b) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332 (d)(4)-(5) applies to the instant action.

## VENUE

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). The Defendant transacts business in this District, and many of the acts constituting the violations of law alleged herein occurred in this District.

## FACTS

11.    Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.    It makes numerous express warranties about the quality of its food and its manufacturing facilities.

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between December 3, 2006 and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaints, Menu Foods tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free number it provided to the public were frequently non-operational.

## FACTS RELATING TO THE NAMED PLAINTIFF

20.    On or about February 25, 2007 Plaintiff purchased a 24 can variety pack of IAMS adult cat food from a Walmart store for her thriteen year-old cat, Gizmo, her thirteen year-old cat, Ziggy, and her eleven year-old cat, Oreo.

21.    Menu Foods is the manufacturer of IAMS adult cat food.

22.    On or about March 4, 2007, shortly after ingesting Menu Food's cat food, Gizmo went into renal failure. Gizmo's kidneys shut down, and on March 5, 2007, she had to be put down.

23.    Osborne incurred over $1,200 in veterinary expenses relating to the attempts to save Gizmo's life and, in addition, to save her other cats. Specifically, another 13 year-old cat, Ziggy has been ill with problems since ingesting the same food, and Oreo, an 11 year-old cat owned by Osborne has also been sick.

24.    Gizo had been with Osborne's family since 1994.

25.    The loss of Gizmo and illness to her other pets has been devasting to Osborne.

## CLASS ALLEGATIONS

26.    Osborne brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.    Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.    Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

(a)    Did Menu Foods act negligently in failing to prevent contamination of its pet food?

(b)    Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

(c)    Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

29.    Osborne will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

30.    A Class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class in impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT I

## (Breach of Warranties)

31.    Plaintiff incorporates by reference the foregoing allegations.

32.    Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

33.    Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

34.    Menu Foods breached the implied warranty of merchantability.

35.   As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.   An order certifying the Class as defined above;

2.   An award of actual damages;

3.   Appropriate injunctive relief;

4.   Medical monitoring damages;

5.   Reasonable attorney's fees and costs; and

6.   Such further and other relief the Court deems appropriate.

## COUNT II

### (Negligence)

36.   Plaintiff incorporates by references the foregoing allegations.

37.   Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38.   Menu Foods breached this duty by failing to exercise care in the producing, processing, manufacturing and offering for sale of the contaminated per food described herein.

39.   Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of contamination even after it had actual knowledge of that fact and of the resulting risks.

40.     As a proximate cause thereof, plaintiff and her class suffered actual damages,

including without limitation the cost of the contaminated pet food and any resulting veterinary

bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following

relief:

1.     An order certifying the Class defined above;

2.     An award of actual damages;

3.     Appropriate injunctive relief;

4.     Medical monitoring damages;

5.     Reasonable attorney's fees and costs; and

6.     Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 26, 2007                                           By:

Bruce E. Newman
NEWMAN, CREED & ASSOCIATES
99 North Street, Route 6
P.O. Box 575
Bristol, CT 06011-0575
(860) 583-5200
Federal Bar No.: 12301

# EXHIBIT S

Document Number Case Number
002          07-C-0159-C
United States District Court
Western District of Wisconsin
Therese M. Owens

Filed/Received
03/21/2007 09:24:12 AM CST

UNITED STATES DISTRICT COURT 2007 MAR 20  PM 4: 26
WESTERN DISTRICT OF WISCONSIN

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

JACQUELINE JOHNSON, on behalf )
of herself and all others similarly )
situated, )
)
)                                    JURY TRIAL DEMANDED
            Plaintiff, )
)
)
v. )
)
THE PROCTOR & GAMBLE )               07  C  0159  C
COMPANY, MENU FOODS, INC., )         Case No.
MENU FOODS INCOME FUND, THE )
IAMS COMPANY, and JOHN DOES )
1 through 100, )
)
            Defendants. )
)
)

## CLASS ACTION COMPLAINT

Plaintiff, Jacqueline Johnson, through her attorneys, Progressive Law Group LLC and

Larry D. Drury Ltd., on behalf of herself and all others similarly situated, complains

against Defendants, upon personal knowledge as to herself, and as to all other matters

upon information and belief based upon, among other things, the investigation made by

her attorneys, as follows:

### INTRODUCTION

1.      This is a consumer class action seeking redress for thousands of consumers who

purchased pet food products made by Defendant, Menu Foods Income Fund, and

marketed and sold by Defendants, The Proctor & Gamble Company, The Iams Company,

and by other unnamed Defendants ("Defendants").

ORIGINAL

2.      Many consumers, like Plaintiff, have pets who have died, or suffered kidney failure or other injury from eating Defendants' pet food.

## PARTIES

3.      Plaintiff, Jacqueline Johnson, is a citizen of the State of Wisconsin and resides in the Western District of Wisconsin. Plaintiff purchased Defendants' pet food products, including but not limited to Iams Select Bites with Tuna in Sauce, Iams Select Bites with Salmon in Sauce, Iams Choice Cuts in gravy, and a variety 12-pack of Iams Select Bites from a Madison, which was specifically purchased at a Wisconsin Pick 'N Save grocery store on February 3, 2007; Plaintiff's cat, Gumbi, developed kidney failure and her health has been irreparably altered as a result of eating the Defendants' pet food at issue.

4.      Defendants, Menu Foods Income Fund and Menu Foods, Inc. (collectively, the "Menu Foods Defendants"), manufactured the pet food at issue in this action for the other co-Defendants in this action and for a host of other makers, marketers and sellers of pet food including popular brands. Menu Foods Income Fund claims to be the leading North American private-label manufacturer of so-called wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets. In 2006, the Fund produced more than one billion containers.

5.      Defendant, The Procter & Gamble Company (hereinafter sometimes referred to as "P&G"), which acquired, and does business as The Iams Company, is an Ohio corporation with its principal place of business in Cincinnati, Ohio, and P&G is therefore a citizen of Ohio.

6.      Defendant, The Iams Company ("Iams") is a corporation with its principle place of business in the State of Ohio, is a citizen of that State, and is owned by P&G. P&G,

Class Action Complaint                          2

the Iams Company, and affiliated companies within their control caused their brands of the consumer products at issue, including Eukanuba® and Iams® brand self-styled "premium" pet foods, to be manufactured, and marketed, distributed and sold to consumers including Plaintiff and the Class, in Wisconsin and throughout the United States.[1]

7.      The true names and capacities of the Defendants sued in this Complaint as Does 1-100, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such fictitious names. Each of the Defendants designated herein as a Doe Defendant is legally responsible in some manner for unlawful acts referred to in this Complaint. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Doe Defendants when such identities become known.

### JURISDICTION AND VENUE

8.      Plaintiff submits to the jurisdiction of the Court. Defendants, or one or more of them, systematically and continually do business in this District and in the State of Wisconsin. Transactions giving rise, in part, to Plaintiff's action occurred in this District.

9.      Plaintiff reasonably believes that millions of units of the pet food products at issue have been purchased by Plaintiff and the Class; the total amount at issue in this case exceeds \$5,000,000.

10.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (d)(2).

---

[1] The actions attributable to P&G or Iams herein are only with respect to the products purchased by the Class that were distributed, sold, and/or marketed by P&G or Iams.

Class Action Complaint                3

## STATEMENT OF FACTS

11.    Defendant, Menu Foods Income Fund, announced, on March 16, 2007, the recall of "cuts and gravy" style pet food in cans and pouches, which it manufactured between December 3, 2006 and March 6, 2007, at two of its United States facilities, under private-label for a large variety of pet food brands purchased by Plaintiff and the other Plaintiff Class members, including designated Iams and Eukanuba pet food products – herein, the pet food products at issue or products at issue.

12.    Defendant, Menu Foods Income Fund has announced that the timing of this production coincides with the introduction of an ingredient from a new supplier. The Menu Foods Defendants have received complaints about the impact on the renal health of the pets consuming the products at issue manufactured during this time period.

13.    Defendants, P&G, and Iams, similarly announced a voluntary recall in the United States and Canada on specific 3 oz., 5.5 oz., 6 oz. and 13.2 oz. canned and 3 oz. and 5.3 oz. foil pouch "wet" cat and dog food products, manufactured by Defendant, Menu Foods Inc.'s Emporia, Kansas plant with the code dates of 6339 through 7073 followed by the plant code 4197.

14.    Between December 2006 and February 2007, Plaintiff purchased pet food products at issue, including, without limitation, pouches of Iams Select Bites with Tuna in Sauce, Iams Select Bites with Salmon in Sauce, Iams Choice Cuts in gravy, and a variety 12-pack of Iams Select Bites from a Madison, which was specifically purchased at a Wisconsin Pick 'N Save grocery store on February 3, 2007

15.    Plaintiff's pet grey tabby cat, Gumbi, on the morning of February 5, 2007, ate one or more of said products that Plaintiff purchased, but Gumbi immediately regurgitated

Class Action Complaint                4

portions of the product and progressively developed lethargy, weight loss, and loss of appetite. Thereafter, veterinary tests revealed acute renal and kidney failure for Gumbi, caused by eating Defendants' pet food product. Gumbi was "pet-hospitalized" and prescribed intravenous fluids for approximately five days as a result.

16.     As a result of harm to her health, Gumbi will have to receive daily subcutaneous fluid-and-drip injections, and will have to undergo medical monitoring tests every few months, for the rest of her life.

17.     To date, Plaintiff has incurred "pet hospital" and veterinarian expenses for Gumbi, arising out of her consumption of Defendant's pet food products at issue, approximately in excess of three thousand dollars ($3,000.00).

18.     Defendants, P&G and Iams have admitted that cats and dogs in the United States have become sick and developed signs of kidney failure, including loss of appetite, vomiting, and lethargy from consuming its pet foods at issue, and has advised consumers to stop using the affected products immediately and seek assistance of a veterinarian where appropriate.

19.     The pet food products at issue are defectively designed and made, and are poisonous or unreasonably dangerous to pets; due to the ingredient composition of said products, the products are not usable for their intended purposes, and when used, cause a significant risk of bodily harm, including severe or fatal bodily harm (such a renal or kidney failure, or death) to the pet.

20.     Said defect and inherent dangers existed in the pet food products at issue at the time Plaintiff and the Class purchased said products, though they could not discover same

at the time of purchase, the dangers inhered in the prodcuts at the time the products left

the possession of the manufacturer, distributor, marketer and seller of said products.

21.     Defendants had a duty to design, manufacture, distribute, market and sell a safe

product, and a duty to warn or disclaim any potential dangers which derive from

unreasonably dangers posed by the product.

## CLASS ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil

Procedure on behalf of herself and all persons and entities who purchased the pet

products at issue, defined herein as "cuts and gravy" style pet food in can or pouch,

manufactured by Menu Foods Income Fund or Menu Foods, Inc., between December 3,

2006 and March 6, 2007, including products ultimately sold or marketed by P&G, Iams

and other pet food brands. Excluded from the Class are the officers and employees of

each of the Defendants, Plaintiff's counsel, and any judges or justices presiding over this

action.

23.     Plaintiff also brings this action on behalf of a Subclass of all persons and entities

who purchased pet products at issue caused to be distributed, marketed and/or sold by

P&G and/or Iams – herein, the "P&G Subclass."

24.     Plaintiff also brings this action on behalf of a Subclass of all persons and entities

who purchased pet products at issue caused to be distributed, marketed and/or sold in the

State of Wisconsin – the "Wisconsin Subclass."

25.     Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3)

of the Federal Rules of Civil Procedure.

Class Action Complaint                6

26.    Plaintiff does not know the exact size of the Class and Subclasses, since this
information is largely in Defendants' exclusive control. But based on the nature of the
trade and commerce involved, Plaintiff believes that the Class and Subclass each
numbers at least in the thousands and that the members of each class are geographically
dispersed throughout the State of Wisconsin, or alternatively, throughout the U.S.
including in Wisconsin. Therefore, joinder of the members of the Class or each Subclass
would be impracticable, and class treatment is the superior method for fairly and
efficiently adjudicating this controversy.

27.    Plaintiff's claims are typical of other Class and Subclass members' claims
because all Class and Subclass members were injured through the uniform misconduct
described herein.

28.    Common legal and factual questions among and within the respective classes
exist, such as:

> a.    Whether the respective Defendants caused to be manufactured,
> distributed, marketed, and sold, the pet food products at issue;
>
> b.    Whether the pet food products at issue are unreasonable dangerous,
> unfit for pet consumption, and/or not as represented by P&G or
> Iams; and
>
> c.    Whether Defendants' conduct caused injury in fact to Plaintiff and
> the members of the Plaintiff Class.

29.    Plaintiff can and will fairly and adequately represent and protect the respective
Plaintiff Class (including Subclass) members' interests, and has no interests that conflict
with or are antagonistic to the Plaintiff Class (or Subclass) members' interests. One or
more of Plaintiff's attorneys are experienced and competent in class action litigation.

30.     Class certification of the respective, alternative classes is appropriate under Rule

23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior

procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

          a.     Common questions of law and fact overwhelmingly predominate
over any individual questions that may arise among or within the
respective classes and, consequently, enormous economies to the
court and parties exist in litigating the common issues, for each
class, on a class-wide basis  instead of on a repetitive individual
basis;

          b.     Class treatment is required for optimal deterrence against, and
compensation for, Defendants' wrongful conduct alleged herein;
and

          c.     The aggregate volume of the claims of the Plaintiff Class and each
Subclass, whether considered in a national class or, alternatively,
in a Wisconsin class, coupled with the economics of scale inherent
in litigating similar claims on a common basis, will enable this
case to be litigated as a class action on a cost-effective basis,
especially when compared with repetitive individual litigation, and
no unusual difficulties are likely to be encountered in this class
action's management in that all legal and factual questions are
common to each class.

31.     Plaintiff's claims are typical of the other Plaintiff Class and Subclass members'

claims because Defendants injured Plaintiff and the respective Class and Subclass

members in the same manner.

32.     Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of

Civil Procedure because prosecution of separate actions would create a risk of

adjudication with respect to individual members of the respective classes, which may, as

a practical matter, dispose of other class members' interests who aren't parties to the

adjudication or which may substantially impair or impede individual class members'

ability to protect their interests.  Separate actions prosecuted by individual class members

Class Action Complaint            8

would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

33.     Class certification, whether as a national Class, P&G Subclass and Wisconsin Subclass, or alternative as a single Wisconsin Class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective Plaintiff Class and Subclass members.

## CAUSES OF ACTION

34.     The preceding paragraphs are incorporated into each of the following causes of action as it set forth in full.

### FIRST CAUSE OF ACTION – UNFAIR TRADE PRACTICE
(Wis. Stats. 100.18)
(P&G Subclass and Wisconsin Subclass Only)

35.     Defendants, P&G and Iams, misrepresented, on the packaging of pet food products at issue which they caused to be marketed and sold to Plaintiff and other members of the P&G Subclass, that said products were, indeed, pet food, were suitable for consumption by pets, and in fact were "premium" pet foods.

36.     Said representations on the product packaging, prominently marketed to retail store isles, are advertisements, announcements, statements or representations containing assertions, representations or statements of fact which are untrue, deceptive and/or misleading, in violation of Wis. Stat. §100.18 and similar state statutes.

37.     In fact, said products are not suitable for consumption by pets, are not properly considered or presented as pet food, are not a "premium" pet food product, are not fit for their intended purpose, are dangerous to the health of the pet and could lead to the pet's

Class Action Complaint                    9

substantial physical injury or death, are really pet food imitations, and contain an ingredient composition that causes the preceding allegations in this paragraph to be true.

38.    P&G and Iams each caused the above-mentioned statements and misrepresentations to be featured on the packaging of their products at issue, which Plaintiff and other members of the P&G Subclass viewed at the time of purchase, with the intent to increase the consumption of, the sale of, or to induce the public to purchase, of their Iams and Eukanuba pet products at issue.

39.    Absent Defendants' untrue, deceptive, or misleading statements and representations, Plaintiff and the other members of P&G Subclass would have acted differently. For instance, they would not have been induced to purchase, nor would they have purchased, the Iams and Eukanuba pet products at issue.

40.    Defendants' above-described statements and misrepresentations about the Iams and Eukanuba pet products at issue have the capacity or tendency to deceive or mislead, and in fact proximately caused damage to Plaintiff and the other members of the P&G Subclass by inducing them to buy a product they otherwise would not have bought.

41.    Because of Defendants' untrue, deceptive, or misleading statements and misrepresentations, Plaintiff and the other members of the P&G Subclass have suffered pecuniary loss.

### SECOND CAUSE OF ACTION – UNFAIR TRADE PRACTICE
(Wis. Stat. § 100.20(5) & Wis. Admin. Code § ATCP 90.02)
(P&G Subclass and the Wisconsin Subclass only)

42.    Unfair business practices are prohibited in Wisconsin. The Wisconsin Department of Agriculture, Trade, and Consumer Protection (DATCP) is authorized to promulgate general orders (rules) forbidding methods of competition in business or trade

Class Action Complaint                10

practices in business which are determined by the department to be unfair. Wis. Stat. § 100.20(1), (2). Any person suffering pecuniary loss because of a violation by any other person of any rule proscribing unfair trade practices may sue for double damages, costs, and reasonable attorney's fees.

43.     Defendants' products are consumer commodities regulated under Wis. Admin. Code §§ ATCP 90.02.

44.     The labels for the pet food products at issue, which the Defendants caused to be made, and/or distributed, marketed and/or sold in the State of Wisconsin, to Plaintiff and the Wisconsin Subclass (e.g. labels for the Iams products at issue which Plaintiff purchased at retail) contain a declaration of identity, as defined in Wis. Admin. Code § ATCP 90.02(1), which is false, deceptive, and misleading, or which is an imitation of an accurate declaration, "Pet Food", in violation of Wis. Admin. Code § ATCP 90.02(3). Said "pet food" products are poisonous or harmful, are improperly identified, contain an improper listing of ingredients, and constitute an imitation of the products they purport to be.

45.     Because of Defendants' above-described unlawful representations and omissions, Plaintiff and the other members of the Wisconsin Subclass have suffered pecuniary loss.

## THIRD CAUSE OF ACTION – NEGLIGENCE

46.     The Menu Foods Defendants designed and manufactured the pet products at issue.

47.     Defendants, P&G and Iams, distributed, marketed and sold those pet products at issue that were sold under their brand names, e.g., Iams and Eukanuba.

48.     Each of the Defendants breached their respective duties and duties of care, e.g., in designing, manufacturing, distributing and selling pet products at issue that are

Class Action Complaint                    11

reasonably safe for their intended purposes and so as not to injure users of the products, especially when the products are used in the same manner prescribed by the maker, designer, distributor or seller, as well as their respective aforementioned duties (*see* ¶¶ 18-20, *supra.*)

49.    Defendants' respective breaches of the aforementioned duties in the course of making, distributing, marketing and selling the pet products at issue to Plaintiff and the Class caused each of them actual and proximate damage. Plaintiff and the Class, who purchased said pet products at issue, were damaged as a result thereof.

## FOURTH CAUSE OF ACTION – STRICT LIABILITY

50.    Each of the Defendants proximately caused pet products at issue to be placed into the stream of commerce and purchased by Plaintiff and other members of the Class.

51.    The Defendants breached their aforementioned duties to Plaintiff and the Class, ¶¶ 18-20 *supra*. Plaintiff and the Class were damaged as a result.

## FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT

52.    The revenues and profits flowing to each of the Defendants from the sale of the pet products at issue inured to the benefit of the Defendants and each of them.

53.    Alternatively, as a result of the Defendants' deceptive and unfair practices outlined above, Plaintiff and other members of the P&G Subclass and Wisconsin Subclass purchased pet food products at issue, which were less than the product advertised and represented and which were not fir for their ordinary and intended purpose.

Class Action Complaint                    12

54.    The untrue, deceptive, and misleading sales and marketing practices described in this Complaint have enriched each of the Defendants at the expense of Plaintiff and the putative Class members.

55.    Plaintiff and other members of the Class are entitled to restitution, and disgorgement of each of the Defendants' ill-gotten gains, as a result of the Defendants' unjust enrichment.

## NOTICE PURSUANT TO WIS. STAT. § 402.

Plaintiff, on behalf of himself and all other similarly situated, hereby puts each of the Defendants on notice that it has breached contracts and warranties for the sale of goods, specifically the pet food products at issue, with all purchasers of that product (including Plaintiff and the other Class members), including breaches of express and implied warranty. The facts and circumstances of such breaches are set forth in this Complaint. Plaintiff intends to amend this Complaint to add claims for breach of warranty and breach of contract if these breaches are not timely cured.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective Class members' favor and against Defendants, as follows:

A.    That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, certify the Class, the Wisconsin Subclass, and the P&G Subclass, appoint Plaintiff as representative of the Class and the Subclasses, and appoint Plaintiff's counsel as class counsel of same.

B.    That this Court rule that each of the Defendants violated the applicable laws, and are therefore liable under said laws as alleged above;

Class Action Complaint                    13

C.     That this Court award appropriate damages, including double damages where appropriate, interest, and injunctive relief to Plaintiff and the Class (including each Subclass);

D.     That this Court determine that the Defendants were unjustly enriched and that restitution is appropriate;

E.     That this Court require each Defendant to account for all revenues or profits improperly received as a result of the aforementioned conduct, enjoin each Defendant from dispersing said monies, and impose a constructive trust on said monies.

F.     That this Court award Plaintiff's counsel reasonable attorneys' fees and costs; and

G.     That this Court order any other relief as it deems just and proper.

Dated:  March 20, 2007                              Respectfully submitted,

                                                    JACQUELINE JOHNSON, on behalf of
                                                    herself and all others similarly situated

                                            By:     _Frank Jablonski_

                                                    Frank Jablonski, Esq.
                                                    State Bar No.: 1000174
                                                    Noah Golden-Krasner, Esq.
                                                    State Bar No.: 1047054
                                                    Progressive Law Group, LLC
                                                    354 West Main Street
                                                    Madison, WI 53703
                                                    Telephone: (608) 258-8511
                                                    Facsimile:  (608) 442-9494


                                                    Larry D. Drury, Esq.
                                                    Larry D. Drury Ltd.
                                                    205 W. Randolph Street, Suite 1430
                                                    Chicago, IL 60606
                                                    Telephone:    (312) 346-7950
                                                    Facsimile:    (312) 346-5777
                                                    *Pro Hac Vice application to be filed*

Ilan J. Chorowsky, Esq.
PROGRESSIVE LAW GROUP, LLC, Of Counsel
1130 North Dearborn Street, Suite 3110
Chicago, IL 60610
Telephone:    (312) 643-5893
Facsimile:    (312) 643-5894
*Pro Hac Vice application to be filed*

# EXHIBIT T

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARA BRAZILIAN, on behalf of herself )
and all others similarly situated, )
                                   )
      Plaintiffs, )
                                     )
            v. )
                                       )
MENU FOODS INCOME FUND, a )
Canadian corporation with its principal )
place of business in Ontario, Canada )
                                     )
      and )
                                       )
MENU FOODS LIMITED, a Canadian )
corporation with its principal place of )
business in Ontario, Canada, )
                                     )
      and )
                                       )             **Civil Action No: 07-**
MENU FOODS, INC., a New Jersey )
Corporation, with its principal place of )
business in Pennsauken, New Jersey and a )           **CLASS ACTION COMPLAINT**
wholly owned subsidiary of MENU )              **AND JURY DEMAND**
FOODS LIMITED, )
                                       )
      and )
                                       )
MENU FOODS MIDWEST )
CORPORATION, a Delaware Corporation )
with its principal place of business in )
Emporia, Kansas and a wholly owned )
subsidiary of MENU FOODS LIMITED, )
                                       )
      and )
                                       )
THE IAMS COMPANY, an Ohio )
Corporation with its principal place of )
business in Dayton, Ohio, )
                                       )
      Defendants. )

Plaintiff Mara Brazilian ("Ms. Brazilian"), individually and on behalf of all others

similarly situated, hereby complains against Defendants Menu Foods Income Fund, Menu Foods Limited, Menu Foods, Inc., Menu Foods Midwest Corporation (collectively the "Menu Foods Defendants") and The Iams Company ("Iams") (all defendants are collectively being referred to as "Defendants") as follows:

## Nature of the Action

1.      This action arises out of Defendants' manufacture and sale of almost 100 brands of tainted pet food that has caused severe illness in, or the death of, an as of yet undetermined number of dogs and cats throughout the United States.

2.      The Menu Foods Defendants issued a belated recall as a result of an investigation that strongly suggested the food in question contained potentially lethal poison.

3.      Defendant Iams has participated in the recall.

4.      As a result and proximate cause of ingesting tainted pet food manufactured by Defendants, Ms. Brazilian's two cats, Fred and Barney, have suffered renal failure that will require daily treatment for the rest of their lives.

5.      Defendants' actions in selling the tainted food were reckless and in breach of their duty to customers, as explained fully below.

6.      On behalf of herself and all others similarly situated throughout the country, Ms. Brazilian accordingly seeks redress for all damages incurred as a result of Defendants' wrongful acts.

## Parties

7.      Plaintiff Mara Brazilian is an individual residing in Portland, Maine.

8.      Defendant Menu Foods Income Fund is a Canadian mutual trust fund with its principal place of business in Ontario, Canada. The Fund is a 50.8% owner of Defendant Menu

2

Foods Limited.

9.      Defendant Menu Foods Limited is a Canadian corporation with its principal place of business in Ontario, Canada.

10.     Defendant Menu Foods, Inc. is a New Jersey Corporation, with its principal place of business in Pennsauken, New Jersey. It is a wholly owned subsidiary of Defendant Menu Foods Limited.

11.     Defendant Menu Foods Midwest Corporation is a Delaware Corporation with its principal place of business in Emporia, Kansas. It is a wholly owned subsidiary of Defendant Menu Foods Limited.

12.     Defendant The Iams Company ("Iams") is an Ohio Corporation with its principal place of business in Dayton, Ohio.

## Jurisdiction and Venue

13.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because (1) Plaintiff and members of her putative class are citizens of states different from those of which Defendants are citizens and (2) the amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district and because the acts giving rise to this action occurred in this District.

## Facts

### A.      The Menu Foods Defendants' Products and Wrongful Acts

15.     The Menu Foods Defendants hold themselves out as manufacturers of safe, nutritious, high-quality dog and cat food.

3

16.    The Menu Foods Defendants make numerous express warranties about the quality of their food and manufacturing facilities.

17.    For example, the Menu Foods Defendants claim that they "manufacture the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and that they operate "state-of-the-art" manufacturing facilities in the United States and Canada.

18.    In late 2006 or early 2007, the Menu Foods Defendants began to receive complaints that pets had died after ingesting food manufactured by the Menu Food Defendants.

19.    The Menu Foods Defendants then began testing their food products on animals.

20.    Several of the test animals became ill and eventually died after ingesting food manufactured by the Menu Foods Defendants.

21.    Despite the Menu Food Defendants' knowledge of the death of animals, the Menu Foods Defendants withheld this information from the public at large, and the public, unaware of this information, continued to provide this food to their pets.

22.    It was not until several weeks after these tests that the Menu Foods Defendants announced a recall of "cuts and gravy" style pet foods. Defendant Iams is participating in this recall. It is unknown at the present time how many pets died or were fatally injured in the interim.

23.    Since the recall, reports have surfaced in the media indicating that a form of rat poison, aminopterin, which has been banned in the United States, may have tainted the recalled pet food.

24.    The amount of aminopterin found in the Menu Foods Defendants' products can cause kidney failure, the very ailment that has caused the illness and/or death of numerous cats

4

and dogs that have ingested products manufactured by the Menu Foods Defendants.

25.     To date, several hundred cases of pet kidney failure have been reported relating to the ingestion of the Menu Foods Defendants' products, and approximately 20% of the affected pets have died.

**B.    Ms. Brazilian and Her Cats**

26.     Ms. Brazilian acquired her two Persian Hybrid cats, Fred and Barney, in or around 1992, the last two cats in a litter at a pet store.

27.     Over the last fifteen years, Ms. Brazilian, who is unmarried, has developed a close bond with her cats, considering them an integral part of her family.

28.     Ms. Brazilian moved to Maine from California in January 2007.

29.     Ms. Brazilian had no family in Maine, having moved to the State solely for employment purposes.

30.     Thus, Ms. Brazilian's cats were her only companions in Maine when she moved to the State.

31.     In or around the end of January 2007, Fred and Barney each became seriously ill.

32.     Ms. Brazilian took both Fred and Barney to her veterinarian, who determined in February 2007 that Fred and Barney were both suffering from incurable kidney failure.

33.     Ms. Brazilian had been feeding Fred and Barney pouch food that was manufactured by the Menu Foods Defendants and sold by Defendant Iams Company as Iams Select Bites.

34.     Several weeks after Fred and Barney became ill the Menu Foods Defendants began the nation-wide recall, and Ms. Brazilian learned that the Iams Select Bites were part of the recall.

5

35.    Neither Fred nor Barney had ever had any significant medical issues during the past 15 years of their lives.

36.    Now, both Fred and Barney each have lost approximately half of their body weight, and Ms. Brazilian has to give them intravenous injections of fluid on a daily basis to keep Fred and Barney alive.

37.    To date, Ms. Brazilian has spent approximately $1,200 on veterinarian bills associated with Fred and Barney's kidney failure.

38.    The continuing treatment of Fred and Barney costs Ms. Brazilian an additional $200-$300 per month, for an undeterminable amount of time.

39.    In addition, Ms. Brazilian has suffered significant emotional harm and the loss of companionship of Fred and Barney.

40.    The damages Ms. Brazilian has suffered are similar to the damages suffered by all members of the plaintiff class throughout the United States.

**C.    Class Allegations**

41.    Ms. Brazilian brings this action, pursuant to Fed. R. Civ. P. 23 on behalf of herself and a class consisting of herself and all others who purchased pet food products manufactured and/or sold by Defendants, which food products caused injury or death to companion animals.

42.    The putative plaintiff class includes thousands, and possibly millions, of pet owners throughout the United States.

43.    The aggregate claims of the plaintiff class exceed $5,000,000.

44.    The class is so numerous that joinder of all members is impracticable.

45.    Ms. Brazilian's claims are typical of claims of the class.

6

46.    Ms. Brazilian will fairly and adequately protect the interests of the class.

47.    Common questions of law and fact exist as to all members of the class, and these questions predominate over any questions affecting only individual members.

48.    Furthermore, a class action is superior to other available methods for adjudicating this controversy because many members of the class would not be able to vindicate their rights in individual suits because their damages are small relative to the burden and expense of litigating individual actions.

49.    This action otherwise meets all prerequisites for class action status.

## Count I
### (Breach of Warranty)

50.    Ms. Brazilian repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

51.    Defendants expressly and impliedly warranted that products they manufactured and/or sold were safe for dogs and cats.

52.    The products manufactured and/or sold by Defendants in fact are not safe for dogs and cats.

53.    Defendants' breach of express and implied warranties has caused Ms. Brazilian, and members of the plaintiff class, significant damages.

## Count II
### (Breach of Contract)

54.    Ms. Brazilian repeats and realleges Paragraphs 1 through 53 as if set forth fully herein.

55.    Ms. Brazilian and the class members purchased Defendants' products based on the understanding that the products were safe for their pets to consume, which understanding

7

formed the terms of a contract with Defendants.

56.     Defendants' products were not safe for consumption and caused dogs and cats to become seriously ill.

57.     The unsafe nature of Defendants' products constituted a breach of contract that caused Ms. Brazilian and members of the plaintiff class significant damages.

### Count III
### (Product Liability – Defect in Design or Manufacture)

58.     Ms. Brazilian repeats and realleges Paragraphs 1 through 57 as if set forth fully herein.

59.     Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants products, which products were defective and unreasonably dangerous.

60.     Defendants' products were sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and were expected to reach and did reach consumers without substantial change in the condition in which they were manufactured and sold by Defendants.

61.     Defendants' products were defective in design or formulation in that when they left the hands of the manufacturers and/or sellers they were unreasonably dangerous.

62.     Upon information and belief, Defendants knew of the defective nature of their products but continued to design, manufacture, market, and sell the products to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' products.

63.     Ms. Brazilian, and members of the class, purchased Defendants' products for their intended or reasonably foreseeable purpose.

64.     The defective and unreasonably dangerous condition of Defendants' products caused Ms. Brazilian and members of the plaintiff class to suffer significant damages.

8

## Count IV
### (Negligence)

65.    Ms. Brazilian repeats and realleges Paragraphs 1 through 64 as if set forth fully herein.

66.    Defendants owed Ms. Brazilian and members of the plaintiff class a duty to reasonably ensure that their products were safe and non-contaminated.

67.    Defendants breached this duty by failing to exercise reasonable care in the manufacturing and/or sale of contaminated products.

68.    Defendants further breached this duty by failing to timely warn Ms. Brazilian and the plaintiff class after Defendants learned that their products were causing injury to dogs and cats.

69.    Defendants' negligence has caused Ms. Brazilian and members of the plaintiff class significant damages.

WHEREFORE, Plaintiff Mara Brazilian, individually and on behalf of all others similarly situated, respectfully requests that the Court certify the class as outlined above; grant judgment in her favor; award damages, including punitive damages and any other damages available under the law; award costs of suit, including reasonable attorney fees; and grant such further relief as this Court deems just and appropriate.

DATED at Portland, Maine this 30th day of March 2007.

/s/ Len Gulino
Leonard M. Gulino
Daniel J. Mitchell
Michael R. Bosse
Theodore A. Small

Bernstein Shur
100 Middle Street; PO Box 9729

9

Portland, ME  04104-5029
207-774-1200

Attorneys for Plaintiffs

# EXHIBIT U

THE O'MARA LAW FIRM, P.C.
WILLIAM M. O'MARA
NEVADA BAR NO. 00837
BRIAN O. O'MARA, ESQ.
NEVADA BAR NO. 08214
DAVID C. O'MARA, ESQ.
NEVADA BAR NO. 08599
311 East Liberty Street
Reno, NV 89501
Telephone: 775-323-1321
775-323-4082 (fax)

Attorneys for Marion Streczyn

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| MARION STRECZYN,<br><br>            Plaintiff,<br><br>vs.<br><br>MENU FOODS INCOME FUND, a foreign corporation; MENU FOODS, INC., a New Jersey Corporation; and DOES I-X, inclusive,<br><br>            Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.<br><br>CLASS ACTION COMPLAINT |

## SUMMARY OF CLAIMS

Plaintiff Marion Streczyn ("Plaintiff"), individually and on behalf of all others similarly situated, files this action for damages against Menu Foods, Inc., a New Jersey Corporation and Menu Foods Income Fund, a foreign corporation ("Defendants") and alleges as follows:

## SUMMARY OF CLAIMS

1.      This is a class action lawsuit brought by Plaintiff on behalf of herself and all others similarly situated who purchased pet food and pet food products produced, manufactured and/or distributed by Defendants that caused injury, illness, and/or death to Plaintiff's household pets.

2.      Defendant Menu Foods Income Funds purports to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket and pet specialty retailers, mass merchandisers and other wholesale and retail outlets, including, among others, stores owned and operated by Kroger Co., Safeway Inc., Wal-Mart Stores Inc., PetSmart Inc., Giant Food, and other large retail chains. Defendants produce hundreds of millions of containers of pet food annually.

3.      Defendants designed, manufactured, marketed, advertised and warranted their pet food products. In conjunction with each sale, Defendants marketed, advertised and warranted that the products were fit for the ordinary purpose for which such goods were used – consumption by household pets – and were free from defects. Defendants produced the pet food products intending that consumers will purchase the pet food products, regardless of the brand or label name, place where the pet food was purchased, or the location where the harmed pets actually consume the pet food. The pet food products were intended to be placed in the stream of commerce and distributed and offered for sale and sold to Plaintiff and purchasers in Nevada and throughout the United States and fed to their pets.

- 1 -

4.  Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on her own behalf and as a representative of a class of persons consisting of all persons in the United States who purchased, or incurred damages by using pet food produced manufactured and/or distributed by Defendants that was or will be recalled by the Defendants, including that produced from December 3, 2006 up to and including March 6, 2007. Among other brands and types of pet food, defective pet food includes the following,

## IAMS CAT
### *Select Bites 3 oz Pouches*
- Adult with Beef in Gravy
- Adult with Chicken and Wild Rice in Gravy
- Adult with Chicken in Gravy
- Adult with Turkey in Gravy
- Adult with Salmon in Sauce
- Adult with Tuna in Sauce
- Kitten with Chicken in Gravy
- Weight Control with Tuna in Sauce
- Active Maturity with Chicken in Gravy
- Variety Pack with Beef, Chicken & Turkey
- Variety Pack with Salmon and Tuna
- Variety Pack with Chicken and Turkey

### *Cat Slices and Flakes in Cans*
- Slices with Turkey in Gravy 3/6 oz
- Slices with Beef in Gravy 3/6 oz
- Slices with Chicken in Gravy 3/6 oz
- Kitten Slices with Turkey in Gravy 3 oz
- Flakes with Tuna & Ocean White Fish in Sauce 3/6 oz
- Flakes with Salmon in Sauce 3/6 oz
- Variety Pack Slices with Chicken and Beef in Gravy 3 oz
- Variety Pack Flakes with Tuna & Ocean White Fish and Salmon in Sauce 3 oz

## IAMS DOG

### *Select Bites 5.3 oz Pouches*
- Puppy with Chicken in Gravy
- Adult with Beef in Gravy
- Adult with Beef, Potatoes and Carrots in Gravy
- Adult with Chicken in Gravy

- 2 -

- Adult with Turkey in Gravy
- Adult with Lamb and Wild Rice in Gravy
- Weight Control with Chicken in Gravy
- Active Maturity with Beef in Gravy
- Variety Pack with Beef, Chicken, Lamb & Rice
- Variety Pack with Beef and Chicken

### *Small Bites 6 oz Cans*
- Puppy with Beef & Chicken in Gravy
- Small Dogs with Chicken in Gravy
- Small Dogs with Beef & Vegetables in Gravy
- Variety Pack for Small Dogs with Beef & Vegetables and Chicken in Gravy

### *Chunks 13.2 oz Cans*
- Beef & Vegetables in Gravy
- Chicken in Gravy
- Active Maturity with Beef in Gravy
- Weight Control with Beef in Gravy
- Puppy with Beef & Chicken in Gravy
- Variety Pack for with Beef & Vegetables and Chicken in Gravy
- Multipack with Beef & Vegetables in Gravy
- Multipack with Beef & Chicken in Gravy
- Multipack with Chicken in Gravy

5.      As a result of the defective products, Plaintiff and members of the Class have suffered

damages in that their pets – members of their families and companions – have been injured, stricken

ill and/or died. Additionally, Plaintiff and members of the Class have suffered economic damages.

6.      Defendants know and have admitted that certain products produced by the Defendants

between December 3, 2006 and March 6, 2007 are defective and causing injury and death to

household pets, and on March 16, 2007, initiated a recall of some of the products. Further, the Food

and Drug Administration has reported that as many as one in six animals died in tests of the products

by Defendants last month after the Defendants received complaints that their products were

poisoning pets around the country. A spokeswoman for the New York State Department of

Agriculture and Markets has said that rodent poison was determined to have been mixed into the

products by Defendants. Testing conducted by the FDA has said that melamine – a chemical banned

- 3 -

in the United States and used to make plastics and fertilizer in Asia – was found in the defective products.

## PARTIES

7.     Plaintiff, Marion Streczyn is a resident of Washoe County, Nevada. Ms. Streczyn purchased and began feeding her cat "Patches," Iams Select Bites cat food as early as December 2006. The Iams Select Bites Cat Food purchased by Plaintiff is a part of the group of products that were produced, manufactured and/or distributed by Defendants.

8.     Defendant Menu Foods Income Fund, is an unincorporated company with its principal place of business in the Province of Ontario, Canada. Upon information and belief, Defendant Menu Foods Income Fund conducts business in the State of Nevada and holds itself out as the leading North American private-label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets. In 2006, the Fund produced more than one billion containers.

9.     Defendant Menu Foods, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110. Defendant Menu Foods Income Fund. Some of Defendant Menu Foods, Inc.'s high managerial officers or agents with substantial authority are also high managerial officers or agents of Defendant Menu Foods Income Fund.

10.     The true names and capacities, whether individual, corporate, partnership, association or otherwise of the Defendants named herein as DOES I through X, inclusive, are unknown to the Plaintiff at this time, who therefore sues said Defendants by fictitious names and will ask leave of the Court to amend this Complaint when the same are ascertained; said Defendants are sued as principals, and/or agents, servants, attorneys and employees of said principals, and all of the acts

- 4 -

performed by them are within the course and scope of their authority of employment; Plaintiff is informed and believes, and thereupon alleges, that each of the said Defendants is legally responsible in some manner for the events and happenings referred to herein, and directly and proximately caused the damages and injuries to the Plaintiff as hereinafter alleged.

11.     Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendants for offering for sale and selling to Plaintiff and members of the Class the products in a defective condition and thereby causing damages to Plaintiff and members of the Class.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367.

13.     Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L. 109-2 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Defective Pet Food

14.     Defendants are in the business of manufacturing, producing, distributing, and/or selling pet food under various brands or labels, and/or for third party firms, including, among other brands or labels, Eukanuba, Iams and Science Diet. Defendants have manufactured or produced pet food for private labels for approximately seventeen (17) of the twenty (20) leading retailers in the United States.

- 5 -

15.    Defendants produce millions of pouches or containers of pet food products each year, a substantial portion of which are sold or offered for sale in the state of Nevada. Upon information and belief, Defendants have sold, either directly or indirectly, thousands of units of defective pet food and pet food products nationwide and in the State of Nevada.

16.    Defendants manufactured, marketed, advertised, warranted and sold, either directly or through its authorized distribution channels, the defective products that caused Plaintiffs damages. Plaintiff and members of the Class have been or will be forced to pay for damages caused by the defect in Defendants' products.

## Plaintiff Has Been Damaged as a Result of Defendants' Defective Products and Wrongful Conduct

17.    From approximately December 2006, through and including March 2007, Plaintiff purchased Iams Select Bites Cat Food pet food from a national chain grocery store operating in Reno, Nevada.

18.    Over the course of this period of time, Plaintiff fed the cat food to her cat Patches.

19.    Patches became extremely ill during the first few weeks of February 2007, as a result of eating the cat food.

20.    Towards the end of that period, Plaintiff began noticing that Patches could not seem to urinate normally and would throw up her food.

21.    On February 3, 2007, Plaintiff took Patches to the veterinarian, who, after holding Patches for several days for observation and testing, informed her that Patches' problem was in her kidneys. The veterinarian gave Patches antibiotics and steroids to help her eat and switched her cat food from Iams to Science Diet. Within about ten (10) days, Patches could not stop throwing up and was in grave pain.

22.    On February 17, 2007, Patches had to be euthanized.

- 6 -

23.     On or about March 16, 2007, Defendants announced a recall of approximately 42 brands of "cuts and gravy style dog food, all produced by the Defendants between December 3, 2006 and March 6, 2007." Defendants had initially received complaints from consumers as far back as February 20, 2007, indicating that certain of Defendants' pet food was causing kidney failure and death in dogs and cats. Additionally, Menu Foods has admitted that it was aware of the tainted pet food as early as March 6, 2007, because it made the decision to change its supplier on that date in the wake of these complaints.

24.     Prior to the recall, Defendants never warned Plaintiff or any other member of the Class that the products would cause their pets to have health problems. As referenced above, Defendants knew about the risks of injury or death at least one month prior to the time that Plaintiff fed the products to her cat.

25.     As a result of their purchases of the defective products, as set forth above, Plaintiff and other members of the Class have suffered and will suffer damages, including, among other things, consequential and incidental damages, such as the loss or disability of their household pets and companions, costs of purchasing the defective products and replacing it with a safe product, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on her own behalf and as a Class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

All persons in the United States who purchased, or incurred damages as a result of using, pet food produced and/or manufactured by Defendants that has been or will be recalled by the Defendants, including, but not limited to those products produced from December 3, 2006 up to and including March 6, 2007.

- 7 -

Following the completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, its parents, subsidiaries, affiliates, directors and officers, and members of their immediate families.

27.     **Numerosity**: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes and therefore avers that there are thousands of Class members throughout the United States.

28.     ***Commonality***: There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members. These common questions include, but are not limited to following:

(a)     Whether Defendants sold pet food and pet food products that were recalled or subject to a recall.

(b)     Whether Defendants advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members.

(c)     Whether Defendants expressly warranted these products.

(d)     Whether Defendants impliedly warranted these products for fitness for a particular purpose.

(e)     Whether Defendants impliedly warranted these products for merchantability.

(f)     Whether Defendants purported to disclaim any express warranty.

(g)     Whether Defendants purported to disclaim any implied warranty.

(h)     Whether any limitation on warranty fails to meet its essential purpose.

- 8 -

     (i)     Whether Defendants intended that their products be purchased by Plaintiff, Class members, or others.

     (j)     Whether Defendants intended, foresaw or could have foreseen that Plaintiff, class members, or others would feed the defective products to their pets.

     (k)     Whether Defendants recalled the pet food products.

     (l)     Whether Defendants were negligent in manufacturing or processing the defective products.

     (m)     Whether using the products as intended – to feed their cats and/or dogs – resulted in loss, injury, damage, or damages to the Class.

     (n)     Whether Defendants' negligence proximately caused loss or injury.

     (o)     Whether Class members suffered direct losses or damages.

     (p)     Whether Class members suffered indirect losses or damages.

29.    **Typicality**: Plaintiffs claims are typical of the claims of the other members of the Class in that all such claims arise out of Defendants' conduct in manufacturing, producing and entering into the stream of commerce defective pet food and pet food products, Defendants' conduct surrounding the recall of its product, and Plaintiff s and Class Members' purchase and use of Defendants' products. Plaintiff and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiffs claims and those of the Class.

30.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiffs claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in litigation of this nature.

- 9 -

31. Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class. Indeed, the predominant issue in this action is whether Defendants' pet food and pet food products are defective and have caused damages to Plaintiff and the members of the Class. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

32. Prosecuting separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants or any other party who opposes.

33. Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## JURY DEMAND

34. Plaintiff and the Class demand a jury trial on all issues triable by a jury.

## FIRST CAUSE OF ACTION
### (Breach of Implied Warranty)

35. Plaintiff hereby adopts and incorporates by reference paragraphs 1-33 as if fully set forth herein.

36. Defendants manufactured, marketed, sold and distributed the defective products.

37. At the time that Defendants marketed, sold, and distributed the defective products, Defendants knew of the purpose for which the products were intended and impliedly warranted that the products were of merchantable quality and safe and fit fur such use.

- 10 -

38.     Plaintiff reasonably relied upon the skill, superior knowledge and judgment of the Defendants as to whether the products were of merchantable quality and safe and fit for its intended use.

39.     Due to Defendants' wrongful conduct as alleged herein, Plaintiff could not have known about the risks and side effects associated with the products until after ingestion by Plaintiff's cats. Contrary to such implied warranty, the products were not of merchantable quality and were not safe or fit for their intended use.

40.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff suffered damages as alleged herein.

### SECOND CAUSE OF ACTION
### (Breach Of Express Warranty)

41.     Plaintiff hereby adopts and incorporates by reference paragraphs 1-33 as if set forth fully herein.

42.     Defendants expressly warranted that the products were safe for consumption by pets.

43.     The products did not conform to these express representations because the products are not safe and cause serious side effects in pets, including death.

44.     As a direct and proximate result of the breach of said warranties, and as the direct and legal result of the defective condition of the products as manufactured and/or supplied by Defendants, and other wrongdoing of Defendants described herein, Plaintiff was caused to suffer damages.

### THIRD CAUSE OF ACTION
### (Negligence)

45.     Plaintiff hereby adopts and incorporates by reference paragraphs 1-33 as if more fully set forth herein.

- 11 -

46.    Defendants owed Plaintiff a duty to only offer safe, non-contaminated products for consumption by household pets.

47.    Through its failure to exercise the due care, Defendants breached this duty by producing, processing, manufacturing, and offering for sale the products in a defective condition that was unhealthy to the Plaintiff's pets.

48.    Additionally, Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measures to prevent the products from being offered for sale, sold, or fed to pets.

49.    Defendants knew or, in the exercise of reasonable care should have known, that the products presented an unacceptable risk to the pets of the Plaintiff, and would result in damage that was foreseeable and reasonably avoidable.

50.    As a direct and proximate result of Defendants' above-referenced negligence, Plaintiff and has suffered loss and damages.

## FOURTH CAUSE OF ACTION
### (Strict Product Liability)

51.    Plaintiff hereby adopts and incorporates by reference paragraphs 1-33 as if more fully set forth herein.

52.    Defendants are the producer, manufacturer and/or distributor of the aforementioned products. The products produced, manufactured and/or distributed by Defendants were defective in design or formulation in that, when the products left the hands of the Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation.

53.    Defendants' defective products were expected to and did reach the Plaintiff without substantial change in condition.

- 12 -

54.     Alternatively, the products manufactured and/or supplied by Defendants were defective in design or formulation, in that, when they left the hands of the Defendants, they were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other pet food products without concomitant accurate information and warnings accompanying the product for the Plaintiff to rely upon.

55.     The products produced, manufactured and/or distributed by Defendants were defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results of same.

56.     The products produced, manufactured and/or distributed by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from the defective products, Defendants failed to immediately provide adequate warnings to the Plaintiff and the public.

57.     As the direct and legal result of the defective condition of the products as produced, manufactured and/or distributed by Defendants, and of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

### FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

58.     Plaintiff hereby adopts and incorporates by reference paragraphs 1-33 as if more fully set forth herein.

59.     As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited form the sale of the defective products, even as the defective products caused Plaintiff to incur damages.

60.     Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of

- 13 -

(g)     Granting such other and further relief as is just and proper.

DATED:  April 2, 2007                          THE O'MARA LAW FIRM, P.C.
                                               WILLIAM M. O'MARA
                                               BRIAN O. O'MARA
                                               DAVID C. O'MARA


                                                   /s/ Brian O. O'Mara
                                                   BRIAN O. O'MARA

                                               311 East Liberty Street
                                               Telephone: 775-323-1321
                                               775-323-4082 (fax)

                                               Attorneys for Plaintiff Marion Streczyn

- 15 -