**JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CHRISTINA TROIANO, Individually and on Behalf of all Others Similarly Situated | MENU FOODS, INC. and MENU FOODS INCOME FUND |

**(b)** County of Residence of First Listed Plaintiff **Broward**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Camden**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809 (Phone: 561-750-3000)

Attorneys (If Known)

CIV-COHN
MAGISTRATE JUDGE
SNOW

**07-60428**

MAR 26

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) |
|---|---|

II. BASIS OF JURISDICTION

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

0:07CV60428-JIC-
155

| IV. NATURE OF SUIT (Place an "X" in One Box Only) | | | |
|---|---|---|---|
| **CONTRACT** | **TORTS** | **FORFEITURE/PENALTY** | **BANKRUPTCY** | **OTHER STATUTES** |

IV. NATURE OF SUIT

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☑ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

| V. ORIGIN (Place an "X" in One Box Only) | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|

V. ORIGIN

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page)
a) Re-filed Case ☐ YES ☑ NO
b) Related Cases ☐ YES ☑ NO

JUDGE _____ DOCKET NUMBER _____

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC §1332 and subsection (d); Class Action Fairness Act of 2005; 28 USC §1367 and 1391

LENGTH OF TRIAL via **5** days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ > 5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD _____
DATE 3/26/07

FOR OFFICE USE ONLY
AMOUNT 350.00 RECEIPT # 539659 IFP

B-182

## U.S. District Court
## United States District Court for the Western District of Washington (Seattle)
## CIVIL DOCKET FOR CASE #: 2:07-cv-00411-RSM

Whaley v. Menu Foods et al
Assigned to: Hon. Ricardo S Martinez
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/19/2007
Jury Demand: None
Nature of Suit: 195 Contract Product
Liability
Jurisdiction: Diversity

**Plaintiff**

**Tom Whaley**
*individually and on behalf of all others
similarly situated*

represented by **Michael David Myers**
MYERS & COMPANY
1809 7TH AVE
STE 700
SEATTLE, WA 98101
206-398-1188
Fax: FAX 398-1189
Email: mmyers@myers-company.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Menu Foods**
*a foreign corporation*

**Defendant**

**The Iams Company**
*a foreign corporation*

**Defendant**

**Dog Food Producers Numbers 1-50**

**Defendant**

**Cat Food Producers 1-40**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2007 | 1 | CLASS ACTION COMPLAINT against defendant(s) Menu Foods, The Iams Company, Dog Food Producers Numbers 1-50, Cat Food Producers 1-40 (Summons(es) issued)(Receipt #: SEA8079), filed by Tom Whaley. (Attachments: # 1 Civil Cover Sheet)(DJ) Modified on 3/21/2007 (DJ). (Entered: 03/21/2007) |

| PACER Service Center |
|---|

*B-183*

| Transaction Receipt | | | |
|---|---|---|---|
| 03/27/2007 13:22:39 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| Description: | Docket Report | Search Criteria: | 2:07-cv-00411-RSM |
| Billable Pages: | 1 | Cost: | 0.08 |

B-184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR 1 9 2007    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOM WHALEY individually and on behalf of
all others similarly situated,

Plaintiff,

vs.

MENU FOODS, a foreign corporation, THE
IAMS COMPANY, a foreign corporation, DOG
FOOD PRODUCERS NUMBERS 1- 50 and
CAT FOOD PRODUCERS 1- 40,

Defendants.

No. **CV7   0411 M**

CLASS ACTION COMPLAINT

07-CV-00411-CMP

Plaintiff Tom Whaley, by and through his undersigned attorneys, Myers & Company,

P.L.L.C., brings this civil action for damages on behalf of himself and all others similarly

situated against the above-named Defendants and complains and alleges as follows:

## I.    NATURE OF ACTION

1.1    Mr. Whaley brings this action as a Class Action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of all persons who purchased any dog or cat food

CLASS ACTION COMPLAINT - 1

B-185

1  which was produced by any of the above-named defendants and/or has had a dog or cat become

2  ill as a result of eating the food.

3      1.2    The defendants are producers and distributors of, *inter alia*, dog and cat food.

4  Menu Foods produces dog and cat food under familiar brand names such as Iams, Eukanuba and

5  Science Diet. Menu Foods distributes its dog and cat food throughout the United States to

6  retailers such as Wal-Mart, Kroger and Safeway.

7      1.3    Dog and cat food which the defendants produced has caused an unknown number

8  of dogs and cats to become ill and die.

9      1.4    To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat

10  food which are causing dogs and cats to become ill. All recalled food to date is of the "cuts and

11  gravy wet" style.

12

13      1.5    As a result of the Defendants' actions Mr. Whaley and other Class members have

14  suffered emotional and economic damage.

## II.    PARTIES

15      2.1    Plaintiff Tom Whaley has at all material times been a resident of Ontario, Oregon.

16      2.2    Defendant Menu Foods is, upon information and belief, a corporation organized

17  under the laws of Canada which transacts business in Washington State and Oregon State.

18

19      2.3    Defendant The Iams Company, is upon information and belief, a foreign

20  corporation which transacts business in Washington State and Oregon State.

21

## III.    JURISDICTION AND VENUE

22

23      3.1    Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the

24  Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds

25

CLASS ACTION COMPLAINT - 2

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B-186

$75,000.00. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.2    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the Defendants systematically and continuously sold their product within this district and Defendants transact business within this district.

## IV.    CLASS ACTION ALLEGATION

4.1    Mr. Whaley brings this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class (the "Class") composed of all persons who purchased any dog or cat food which was produced by the defendants and/or has had a dog or cat become ill as a result of eating the food. Mr. Whaley reserves the right to modify this class definition prior to moving for class certification.

4.2    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.    The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.    Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu Foods has identified 50 dog foods and 40 cat foods which may be causing harm to pets.

c.    Mr. Whaley's claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

d.    Mr. Whaley is a member of the Class.

CLASS ACTION COMPLAINT - 3

B-189

e.      There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

i.      Did the defendants make representations regarding the safety of the dog and cat food they produced and sold?

ii.      Were the defendants' representations regarding the safety of the dog and cat food false?

iii.      Did the defendants' dog and cat food cause Mr. Whaley and other Class members' pets to become ill?

iv.      Were Mr. Whaley and other Class members damaged?

f.      These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

g.      Mr. Whaley will fairly and adequately protect the interests of the Class in that Mr. Whaley has no interests that are antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions to represent himself and the Class;

h.      Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

i.      Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if

CLASS ACTION COMPLAINT - 4

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B-188

1  any, Class members could afford to seek legal redress individually for the wrongs Defendants

2  have committed against them;

3         j.    This action will foster an orderly and expeditious administration of Class

4  claims, economies of time, effort and expense, and uniformity of decision;

5         k.    Inferences and presumptions of materiality and reliance are available to

6  obtain class-wide determinations of those elements within the Class claims, as are accepted

7  methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants'

8  common liability, the Court can efficiently determine the claims of the individual Class

9  members;

10

11         l.    This action presents no difficulty that would impede the Court's

12  management of it as a class action, and a class action is the best (if not he only) available means

13  by which members of the Class can seek legal redress for the harm caused them by Defendants.

14         m.    In the absence of a class action, Defendants would be unjustly enriched

15  because they would be able to retain the benefits and fruits of their wrongful conduct.

16      4.3    The Claims in this case are also properly certifiable under applicable law.

17         **V.    STATEMENT OF FACTS**

18      5.1    Plaintiff Tom Whaley was the owner of a female cat named Samoya.

19      5.2    Mr. Whaley purchased Iams brand cuts and gravy wet-style cat food from Wal-

20  Mart for Samoya to consume.

21      5.3    Samoya ate the Iams brand cuts and gravy wet-style cat food between December

22  2006 and February 2007.

23

24

25

CLASS ACTION COMPLAINT - 5

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B-189

5.4    Samoya became extremely ill and Mr. Whaley took her to a veterinarian who informed him that Samoya had suffered kidney failure, also known as acute renal failure. Samoya had to be euthanized.

5.5    In March 2007 Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food which had caused dogs and pets to become ill. One common symptom in the sick animals was kidney failure, also known as acute renal failure.

5.6    The Iams brand cuts and gravy wet-style cat food that Samoya consumed between December 2006 and February 2007 is one of the brands that Menu Foods recalled.

5.7    As a result of Defendants' acts and omissions Mr. Whaley and other Class members have suffered emotional and economic damage.

## VI.    CAUSES OF ACTION

A.    <u>Breach of Contract</u>

6.1    Plaintiff realleges all prior allegations as though fully stated herein.

6.2    Plaintiff and Class members purchased pet food produced by the defendants based on the understanding that the food was safe for their pets to consume.

6.3    The pet food produced by the defendants was not safe for pets to consume and caused dogs and cats to become ill. The unsafe nature of the pet food constituted a breach of contract.

6.4    As a result of the breach Plaintiffs and Class members suffered damages which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

CLASS ACTION COMPLAINT - 6

MYERS & COMPANY, P.L.L.C.
1809 Seventh Avenue, Suite 700
Seattle, Washington 98101
Telephone (206) 398-1188

B-190

B.    Unjust Enrichment

6.5    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.6    Defendants were and continue to be unjustly enriched at the expense of Mr. Whaley and other Class members.

6.7    Defendants should be required to disgorge this unjust enrichment.

C.    Unlawful, Deceptive and Unfair Business Practices

6.8    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.9    Defendants' sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

6.10    Defendants' sale of hazardous pet food has the capacity to deceive a substantial portion of the public and to affect the public interest.

6.11    As a result of Defendants' unfair or deceptive acts or practices Mr. Whaley and other class members suffered injuries in an amount to be proven at trial.

D.    Breach of Warranties

6.12    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.13    Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

6.14    Defendants' conduct as described herein constitutes breach of an implied or express warranty of affirmation.

6.15    Defendants' conduct as described herein constitutes breach of an implied warranty of merchantability.

CLASS ACTION COMPLAINT - 7

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B-191

6.16    Defendants' conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

6.17    As a proximate result of the aforementioned wrongful conduct and breach, Mr. Whaley and other class members have suffered damages in an amount to be proven at trial. Defendants had actual or constructive notice of such damages.

E.    Negligent Misrepresentation

6.18    Mr. Whaley realleges all prior allegations as though fully stated herein.

6.19    Defendants owed Mr. Whaley and class members a duty to exercise reasonable care in representing the safety of its dog and cat foods.

6.20    Defendants falsely represented that its dog and cat food was safe for consumption by dogs and cats.

6.21    In reality, defendants' dog and cat food caused dogs and cats to become ill and, in some cases, to die.

6.22    Mr. Whaley and class members reasonably relied on the information provided by Defendants regarding the safety of its dog and cat food.

6.23    As a proximate cause of Defendants' false representations Mr. Whaley and other Class members suffered damages in an amount to be proven at trial.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Mr. Whaley and Class members request that the Court enter an order of judgment against Defendants including the following:

A.    Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

CLASS ACTION COMPLAINT - 8

MYERS & COMPANY, P.L.L.C.
1809 SEVENTH AVENUE, SUITE 700
SEATTLE, WASHINGTON 98101
TELEPHONE (206) 398-1188

B-192

B.    Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with defendants and their acts or omissions) and such other relief as provided by the statutes cited herein;

C.    Prejudgment and post-judgment interest on such monetary relief;

D.    Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

E.    Other appropriate injunctive relief;

F.    The costs of bringing this suit, including reasonable attorneys' fees; and

G.    Such other relief as this Court may deem just, equitable and proper.

DATED this 19th day of March, 2007.

MYERS & COMPANY, P.L.L.C.

Attorneys for Plaintiffs and Class members

By:  /s/ Michael David Myers
     Michael David Myers
     WSBA No. 22486
     Myers & Company, P.L.L.C.
     1809 Seventh Avenue, Suite 700
     Seattle, Washington 98101
     Telephone: (206) 398-1188
     Facsimile: (206) 400-1112
     E-mail: mmyers@myers-company.com

CLASS ACTION COMPLAINT - 9

B-193

## U.S. District Court (Live Database)
## U.S. District Court - Eastern District of Tennessee (Knoxville)
## CIVIL DOCKET FOR CASE #: 3:07-cv-00094

Holt v. Menu Foods Inc.
Assigned to: Honorable Thomas W Phillips
Referred to: Magistrate C Clifford Shirley
Cause: 28:1391 Personal Injury

Date Filed: 03/19/2007
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Lizajean Holt**

represented by **A James Andrews**
A. James Andrews, Attorney at Law
905 Locust Street
Knoxville, TN 37902
865-660-3993
Fax: 865-523-4623
Email: andrewsesq@icx.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole Bass**
905 Locust Street
Knoxville, TN 37902
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Perry A Craft**
Craft & Sheppard
214 Centerview Drive
Suite 233
Brentwood, TN 37027
615-309-1707
Fax: 615-309-1717
Email:
perrycraft@craftsheppardlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Menu Foods Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2007 | 1 | COMPLAINT against Menu Foods Inc. (Filing fee $ 350), filed by Lizajean Holt. (Phillips/Shirley)(RLK) (Entered: 03/20/2007) |

*B-184*

| 03/19/2007 | | Filing fee: $ 350, receipt number K3004752 (RLK) (Entered: 03/20/2007) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 03/27/2007 16:24:16 | | | |
| **PACER Login:** | mw0078 | **Client Code:** | 060228-00001/91103 |
| **Description:** | Docket Report | **Search Criteria:** | 3:07-cv-00094 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

B-195

3/27/2007

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| LIZAJEAN HOLT, | ) | |
| | ) | |
| Individually, and on behalf of similarly situated persons, | ) | |
| | ) | No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Class action |
| | ) | |
| MENU FOODS, INC., | ) | JURY DEMAND |
| | ) | CLASS ACTION |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

### I. Class Action

1. Plaintiff, individually and as representative of a Class of similarly situated persons more defined below, brings suit against the named Defendant for offering for sale and **selling** to Plaintiff and Class members pet food and food products – "cut and gravy" pet products – formally **recalled** on March 16, 2007. Defendant is a corporation doing business and operating in the United States. Defendant recalled cat and dog food products that are sold under numerous brands by several national chain stores in Tennessee and other States in the United States. The pet food products were produced by Defendant(s), a private label manufacturer, labeled by the Defendant, and then distributed and ultimately sold to Plaintiff, Class Members, and others. Defendant issued or caused to be issued a press release announcing the recall, and the United States Food and Drug Administration issued a press release the same day. These pet food products were intended to be placed in the stream of commerce and distributed and offered for sale

B-196

and sold to Plaintiff and purchasers in Tennessee and the United States and fed to their pets, cats and dogs.

## II. Jurisdiction and Venue

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L.109-2 because a part or substantial part of the events or omissions giving rise to the claim occurred in this judicial district, or a substantial part of property that is the subject of the action is situated in this judicial district.

4.  In this judicial district, Plaintiff purchased the recalled pet food product made by or for Defendant, and her pet ate or consumed it.  Thousands of other consumers/customers – including Plaintiff and other Class Members – purchased the recalled or contaminated products in this judicial district from retailers that Defendant, its agents, affiliates, or others it or they controlled sold or made available to them.  In turn, retailers or others sold these recalled products to the general public, including Plaintiff, Class members and other purchasers. These products were purchased for consumption by the pets of Plaintiff and the Class members.  Defendant made or caused these products to be offered for sale and sold to the public, including Plaintiff.

5.  Rule 23 of the Federal Rules of Civil Procedure applies to class actions as well.

## III. Plaintiff

B-192

6. At all times material hereto, Plaintiff Lizajean Holt was and is a citizen of the State of Tennessee and the United States and resides in Knox County, Tennessee.

**IV. Plaintiff's Purchase(s)/Defendant's Recall**

7. Plaintiff purchased recalled brands of Pet Pride and Iams pet food from a national chain grocery store, Kroger, operating in Knox County, Tennessee. Kroger, like other retailers, did not alter the product produced by the Defendant in any way prior to selling it to Tennessee consumers and other consumers throughout the United States.

8. Without knowing that Defendants would recall the product after it was offered for sale and sold to her, Plaintiff purchased and fed the product(s) to her cat, her pet. Her pet became lethargic and began drinking large amounts of water and Plaintiff discontinued feeding the Defendant's products to her cat prior to the recall notice. Plaintiff and thousands of other consumers will now face veterinary bills to have their pets evaluated for kidney damage.

9. Before her purchase, Defendant never warned Plaintiff that the pet food product that she purchased for feeding her pet may or would cause it have health problems or concerns or that she would have to take her pet to a veterinarian due to a health concern relating to or resulting from the tainted pet food.

10. On or on about March 16, 2007, Defendant issued a recall for certain pet food for cats and dogs that it manufactured in plants that it controlled, owned, operated, or managed in the United States.

11. Defendant's business consists substantially of providing private label pet foods at its plants or pet foods under other brands, not its own. In turn, Defendant's

3

B -198

products are sold under a variety of labels or brands listed on its website as of March 17, 2007 and set forth below.

12. The product that Plaintiff purchased at a Kroger in Knoxville was a product recalled by Defendant.

13. After Plaintiff purchased the pet food and fed it to her cat, she learned about the recall and the actual or potential problems and concerns from purchasing and feeding the product to her pet.

14. Plaintiff bought the product(s) for their intended purposes: to feed her pet.

15. Defendant placed these pet products in the stream of commerce in Tennessee and elsewhere expecting that consumers such as Plaintiffs, the Class members, and the general public would feed these products to their pets.

**V. Defendant, Its Business, and the Recall**

16. At all times material hereto, Defendant Menu Foods, Inc. was and is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110. Defendant is ultimately owned or controlled by Menu Foods Income Group, an Ontario based legal entity. Some of Defendant's high managerial or officers or agents with substantial authority are also high managerial officers or agents of Menu Foods Income Group. Defendant may be served through the Secretary of State for Tennessee or as provided by law.

17. Defendant Menu Foods, Inc. owns, controls, is related to or an affiliate of a firm with plants where the pet food is manufactured or processed that are located in the United States. These plants are located in Emporia, Kansas and, Pennsauken, New

4

*B-199*

Jersey, the place of manufacture where the pet products were recalled, and/or at other locations in the United States.

18.  Defendant is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc.  It produces hundreds of millions of containers of pet food annually.

19.  Defendant has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States.

20.  Defendant's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie.

21. Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion,

B-200

Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura

Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max,

Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty,

President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot,

Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn

Dixie, and Your Pet.

22.  On Defendant's website as of March 17, 2007, it listed by brands, the size of

the container or pouch, the dates of manufacture, and the products subject to recall.

Thus, each container or pouch and size of each brand or label listed – subject to the recall

above – was noted specifically on its web site.  Thus, a 3 ounce can or pouch of Pet Pride

Pouch Mixed Grill 24 X 3 with sale by date of March 8, 2009, with a specified "UPC"

number was one of about 150 separate Pet Pride labeled cat food that Defendant recalled.

The other brands also generally listed numerous separate pouches or containers bearing

the major private label or brand with a further sub-description similar to the manner

described above, by brand or label.

23.  After reports or complaints from pet owners about symptoms – such as

vomiting or lethargy – suggesting kidney failure in their dogs and cats and/or after reports

of deaths of certain pets, from or through its Canadian office or affiliation, Defendant

caused or issued a recall of certain specified pet products, reportedly totaling between 40

and 60 million cans.

24.  Defendant also advised a governmental agency of the United States about the

recall and certain events leading to the recall, namely the Food and Drug Administration

(FDA).

B-201

25. Defendant produces over 1,000,000,000 pouches or containers of pet food products each year, a substantial portion of which is sold or offered for sale in Tennessee or for Tennesseans who purchase the products for their pets. Many consumers who fear for the health of their pets will no longer have the product because it has been fed to the pets.

26. Defendant knows or should know that national, regional, and/or local distributors will distribute these finished pet food products that it manufactures or processes to retailers to offer them for sale in Tennessee to Tennesseans who purchase and buy them for their pets for consumption by their pets in the State of Tennessee and in this judicial district.

27. Defendant knows or understands that millions or tens of millions of cans or pouches of the pet food products that it manufactures or produces will be advertised, promoted, and sold in Tennessee and this judicial district, including a significant or substantial part of the recalled pet food.

28. Defendant knows or understands that the promotion and advertising of pet food produced at its plants in part targets consumers and customers in Knox County, in this judicial district, in the State of Tennessee, regionally, or nationally.

29. Defendant makes or produces the pet food products in its plants with a purpose or design that consumers and customers will purchase them, regardless of brand or label name, place of purchase, or place where pets actually consume them.

30. Defendant makes or produces for third parties well-known, lesser known, and/or premium or discount brands or labels of pet foods and knows that customers and consumers will ultimately purchase them to feed to their pets.

B-202

31. Defendant desires that consumers and others who purchase or consider purchasing a pet food product made or produced in one of its plants, by whatever label or brand, believe that the pet food product is safe for their pets to eat.

32. In the last few days, Defendant has recalled specified pet food products that consumers and customers purchased from a time beginning about December 3, 2006 and concluding about March 6, 2007.

33. Class members and others have purchased the pet products that were recalled across the United States, in Tennessee, and in this judicial district.

34. Class members and others who purchased or fed Defendant's products to their pets did so in this judicial district, in Tennessee, and in the United States.

35. Some class members or others have already taken their pets to a veterinarian for treatment or diagnosis related to their pets eating the recalled pet food and more will do so as word of the recall spreads. For instance, the Knoxville NewsSentinel carried a prominent story about the recall and the potential dangers to the pets of East Tennessee citizens in its Sunday, March 18, 2007 edition.

36. Class members have suffered and will suffer injuries, losses, or damage as a result of the recall and/or feeding their animals the food that was recalled.

37. There have been other reported incidents of pet food being recalled as a result of possible or actual concerns or problems with the pet food and its or their effects on pets. Defendant knew or should have known about the risks and possible injury.

**VI. Plaintiff, Class Members, and Others' Losses, Damages, and Injuries**

38. As a result of their purchases of the pet food recalled or subject to recall, set forth above, Plaintiff, Class members, and others have suffered and will suffer a loss,

B-203

damage, injury, and sustained damages, including consequential and incidental damages, such as costs of purchasing the contaminated food product and replacing it with a safe food product, including sale tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendant, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

**VII. Breach of Warranties & Remedies**

39. Defendant breached express warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

38. Defendant breached implied warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

40. Defendant breached the implied warranty of fitness for a particular purpose by claiming certain of the pet food that it manufactured or produced and was recalled were fit and safe for consumption by pets and thereby violated the Uniform Commercial Code.

41. Defendant breached the implied warranty of merchantability. In fact, the pet food subject to recall and purchased or used by Plaintiff, the Class, and others was not merchantable. This breach violated the Uniform Commercial Code.

42. Plaintiffs are entitled to the remedies for breach authorized by the Uniform Commercial Code and other law.

**VIII. Negligence**

9

B-204

43. Defendants owed Plaintiff and the Class a duty to only offer safe, non-contaminated products for consumption by pets and offered for sale and sold in the stream of commerce.

44. Though its failure to exercise due care Defendant owed Plaintiff, the class, and others, Defendant was negligent in producing, processing, manufacturing, and offering for sale the recalled pet food and pet food products it offered for sale and sold to Plaintiff, the class, and others.

45. Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the pet food products that were recalled from being offered for sale, sold, or fed to pets.

46. Defendant knew or should have known that the pet food that was recalled presented an unacceptable risk to the pets of the Plaintiff, the Class, and others and would result in damage that was foreseeable and reasonably avoidable.

47. The loss, damage, and injuries were foreseeable.

48. Defendant's negligence proximately caused the loss, damage, injury, and damages to Plaintiff, the Class, and others.

## IX. Statutory Unfair or Deceptive Trade Practices Act

49. Plaintiff, the Class, purchasers, others, and Defendant are each a "person" within the meaning of Tenn. Code Ann. §47-18-103.

50. Defendant's offer for sale or sale of their recalled pet food products is in or affects trade or commerce in Tennessee.

10

B-205

51. Defendant impliedly represented to the public, Plaintiff, the Class and others that its pet food products were safe for consumption by their pets and could be safely purchased.

52. In fact, Defendant recalled or caused to be recalled millions of containers or pouches of pet food because it risked the health and well-being of consumers, customers, Plaintiff, purchasers, the Class, and others.

53. Defendant violated Tenn. Code Ann. §47-18-104 (a) and sub-parts of (b) by placing these unsafe pet food products in the stream of commerce in Tennessee.

54. Each Plaintiff, Class member, and other person adversely affected in Tennessee has suffered an ascertainable loss of money or property due to a violation of the Consumer Protection Act.

55. Plaintiffs brings a claim for a violation of the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, including the ascertainable loss of money or property by each such person.

## X. Rule 23

56. Plaintiffs ask this Court to certify the following Class:

All persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendant that was or will be recalled by the Defendant, including that produced from December 3, 2006 up to and including March 6, 2007.

57. Plaintiff is a member of the Class, sues as a representative party on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

58. There are questions of law or fact common to the Class. These common questions include but are not limited to the following:

B-206

62. The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

63. They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

64. Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## XII. Jury Demand

65. The Class demands a jury trial on all issues triable by a jury.

## XIII. Prayer for Relief

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1. That process issue and Defendant be served. (Plaintiff's counsel will first provide Defendant's agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 with a Notice of Lawsuit by mail pursuant to the Federal Rules)

2. That as soon as practical, the Court certify a Class, defined herein, or modified as appropriate under the facts and law.

3. That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.

14

B-202

4. That the Court find that Defendant manufactured or processed the pet food products that were sold or offered to sale to Plaintiff and the Class.

5. That the Court find that Defendant intended Plaintiff and Class members to believe that the pet foods sold were fit and safe for consumption by their pets.

6. That a trial be held and Defendants be held liable to the Class for – breach of warranty, negligence, and under state statutes prohibiting deceptive trade practices.

7. That the Class be awarded an amount sufficient for direct damages occasioned by Defendants' acts and practices.

8. That the Class be awarded an amount sufficient for indirect, consequential, and incidental damages occasioned by Defendant's acts and practices.

9. That the Class be awarded treble damages or special damages authorized by state statutes prohibiting deceptive trade practices, depending upon the State where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses recoverable under law.

11. That the Court order such other, further relief as the case requires and justice demands.

Dated:  March 19, 2007.

Respectfully submitted,

/s/ A. James Andrews
A. James Andrews, BPR # 15772
905 Locust Street
Knoxville, Tennessee 37902
(865) 660-3993
Fax: (865) 523-4623

15

B-208

/s/Perry A. Craft
Perry A. Craft, BPR # 6057
Craft & Sheppard, PLC
The Shiloh Building
214 Centerview Drive
Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)


/s/Nichole Bass
Nicole Bass, BPR # 021383
905 Locust Street
Knoxville, Tennessee 37902
(865) 310-6804

Cost Bond

We are sureties for costs not to exceed $1,000.

/s/ A. James Andrews

16

B-209

NOLAN

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.0 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:07-cv-01543

Majerczyk v. Menu Foods, Inc.                          Date Filed: 03/20/2007
Assigned to: Honorable Wayne R. Andersen               Jury Demand: Plaintiff
Demand: $75,000                                        Nature of Suit: 385 Prop. Damage Prod.
Cause: 28:1332 Diversity-Product Liability             Liability
                                                       Jurisdiction: Diversity

**Plaintiff**

**Dawn Majerczyk**                         represented by   **Jay Edelson**
*individually and on behalf of a class of*               Blim & Edelson, LLC
*similarity situated individuals*                        53 West Jackson Boulevard
                                                         Suite 1642
                                                         Chicago, IL 60604
                                                         (312)913-9400
                                                         Email: jay@blimlaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Menu Foods, Inc.**
*a New Jersey Corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/20/2007 | 1 | COMPLAINT filed by Dawn Majerczyk; Jury Demand.(gej, ) (Entered: 03/21/2007) |
| 03/20/2007 | 2 | CIVIL Cover Sheet (gej, ) (Entered: 03/21/2007) |
| 03/20/2007 | 3 | ATTORNEY Appearance for Plaintiff Dawn Majerczyk by Jay Edelson. (gej, ) (Entered: 03/21/2007) |
| 03/20/2007 | 5 | SUMMONS Issued as to Defendant Menu Foods, Inc. (gej, ) (Entered: 03/21/2007) |

| PACER Service Center |
|---|
| Transaction Receipt |
| 03/27/2007 15:28:46 |

| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
|---|---|---|---|
|  | Docket | Search |  |

*B-210*

| Description: | Report | Criteria: | 1:07-cv-01543 |
|---|---|---|---|
| Billable Pages: | 1 | Cost: | 0.08 |

KC **FILED**

MAR 3 0 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DAWN MAJERCZYK individually and on
behalf of a class of similarly situated individuals,

          Plaintiff,

          v.

MENU FOODS, Inc., a New Jersey Corporation,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**07CV1543**
**JUDGE ANDERSEN**
**MAGISTRATE JUDGE NOLAN**

**Jury Trial Demanded**

### CLASS ACTION COMPLAINT

Plaintiff Dawn Majerczyk brings this class action complaint against defendant Menu Foods, Inc. ("Menu Foods") to seek redress for herself and all other individuals injured by its sale of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.    Menu Foods, one of the largest pet food manufacturers in the world, recently issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.    That recall was issued – belatedly – as a result of evidence that the pet food in question was contaminated with a potentially lethal agent.

3.    When ingested by an animal, the contaminated pet food can cause immediate renal failure, resulting in the complete shutdown of the animal's kidneys and, ultimately, its death.

4.    Menu Foods' actions in selling the contaminated food and failing to issue the recall sooner were reckless and in breach its duties and warranties to its customers.

B-212

5.    Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Dawn Majerczyk's cat, as described more fully below.

6.    On behalf of a nationwide class, Majerczyk seeks redress for that misconduct.

## PARTIES

7.    Plaintiff Dawn Majerczyk is a citizen of Illinois, residing in Cook County, Illinois.

8.    Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principle place of business in New Jersey. It does business throughout the United States, including Cook County, Illinois.

## JURISDICTION

9.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332(d) because (a) plaintiff and numerious members of her putative class are citizens of states different from those of which Menu Foods is a citizen, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332(d)(4)-(5) applies to the instant action.

## VENUE

10.    Venue is proper in this district under, *inter alia*, 28 U.S.C. §§ 1391(a)(1).

## FACTS

11.    Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.    It makes numerous express warranties about the quality of its food and its manufacturing facilities.

2

B-213

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between Dec. 3, 2006, and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that the pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaint, Menu Foods tested its food on approximately 40 to 50 pets.  Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner.  For example, both its website and the toll-free telephone number it provided to the public were frequently non-operational.

### FACTS RELATING TO THE NAMED PLAINTIFF

20.    On or about March 10, 2007, Majerczyk purchased several pouches of Special Kitty Select Cuts from a Walmart store for her nine-year-old cat, Phoenix.

21.    Menu Foods is the manufacturer of Special Kitty Select Cuts.

3

B-214

22.    On March 16, 2006, shortly after ingesting Menu Food's cat food, Phoenix went into renal failure. Phoenix's kidneys shut down, and on March 17, 2007, he had to be put down.

23.    Majerczyk incurred over $300 in veterinary expenses relating to the attempts to save Phoenix's life.

24.    Phoenix had been with Majerczyk's family from birth.

25.    The loss was devasting not only to Majerczyk, but also to her seventeen-year-old son and fourteen-year-old daughter as well.


## CLASS ALLEGATIONS.

26.    Majerczyk brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.    Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.    Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

(a)    Did Menu Foods act negligently in failing to prevent the contamination of its pet food?

(b)    Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

4

B - 215

(c)    Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

29.    Majerczyk will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

30.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class is impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT 1

### (Breach of Warranties)

31.    Plaintiff incorporates by reference the foregoing allegations.

32.    Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

33.    Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

34.    Menu Foods breached the implied warranty of merchantability.

35.    As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

5

B-216

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An award of actual damages;

3. Appropriate injunctive relief;

4. Medical monitoring damages;

5. Reasonable attorney's fees and costs; and

6. Such further and other relief the Court deems appropriate.

## COUNT II
### (Negligence)

36. Plaintiff incorporates by reference the foregoing allegations.

37. Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38. Menu Foods breached this duty by failing to exercise due care in the producing, processing, manufacturing and offering for sale of the contaminated pet food described herein.

39. Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of the contamination even after it had actual knowledge of that fact and of the resulting risks.

40. As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

6

B-212

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An award of actual damages;

3. Appropriate injunctive relief;

4. Medical monitoring damages;

5. Reasonable attorney's fees and costs; and

6. Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 20, 2007

Dawn Majerczyk, individually and on behalf of a class of similarly situated individuals

one of her attorneys

John Blim
Jay Edelson
Myles McGuire (Of Counsel)
Blim & Edelson, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
(312) 913-9400
(312) 913-9401 (Fax)

7

B-218

# U. S. District Court
## Western District of Arkansas (Fayetteville)
## CIVIL DOCKET FOR CASE #: 5:07-cv-05053-JLH

Sims et al v. Menu Foods Income Fund et al
Assigned to: Honorable Jimm Larry Hendren
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/21/2007
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

### Plaintiff

**Charles Ray Sims**
*Individually and on behalf of all others
similarly situated*

represented by **Jason M. Hatfield**
Lundy & Davis, LLP
300 North College Ave.
Suite 309
Fayetteville, AR 72701
(479) 527-3921
Fax: (479) 587-9196
Email: jhatfield@lundydavis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Pamela Sims**
*individually and on behalf of all others
similarly situated*

represented by **Jason M. Hatfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## V.

### Defendant

**Menu Foods Income Fund**

### Defendant

**Menu Foods Midwest Corporation**

### Defendant

**Menu Foods South Dakota Inc.**

### Defendant

**Menu Foods, Inc.**

### Defendant

**Menu Foods Holdings, Inc.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 03/21/2007 | 1 | COMPLAINT against Menu Foods Holdings, Inc., Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota |

B-219

|  |  | Inc., Menu Foods, Inc. ( Filing fee $ 350 receipt number 5000049.), filed by Charles Ray Sims, Pamela Sims.(ct) (Entered: 03/21/2007) |
|---|---|---|
| 03/21/2007 |  | 6 Summons Issued as to Menu Foods Holdings, Inc., Menu Foods Income Fund, Menu Foods Midwest Corporation, Menu Foods South Dakota Inc., Menu Foods, Inc. and returned to attorney/plaintiff for service (ct) (Entered: 03/21/2007) |
| 03/23/2007 | 2 | Remark copy of complaint and docket sheet sent to MDL (ct) (Entered: 03/23/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/27/2007 15:21:04 | | |
| **PACER Login:** | mw0078 | **Client Code:** | 060228-00001/91103 |
| **Description:** | Docket Report | **Search Criteria:** | 5:07-cv-05053-JLH |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

B-220
3/27/2007

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 1 2007

CHRIS R. JOHNSON, CLERK

BY
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES RAY SIMS and PAMELA SIMS,**<br>**Individually and on behalf of all others**<br>**similarly situated,**<br>     **Plaintiffs,** | § § § § § § | **CIVIL ACTION NO.** _07-5053_ |
| **VERSUS** | § § § | |
| **MENU FOODS INCOME FUND,**<br>**MENU FOODS MIDWEST CORPORATION,**<br>**MENU FOODS SOUTH DAKOTA INC.,**<br>**MENU FOODS, INC., MENU FOODS**<br>**HOLDINGS, INC.,**<br>    **Defendants.** | § § § § § § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CLASS ACTION COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, CHARLES RAY SIMS and PAMELA SIMS (hereinafter collectively "Plaintiff," "Plaintiffs," or "SIMS"), major residents in the State of Arkansas, individually and on behalf of all others similarly situated, who file this Class Action Complaint pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), seeking monetary relief for themselves and the class they seek to represent. This suit is brought against MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC., representing as follows:

B-221

## GENERAL ALLEGATIONS

1.     This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

2.     This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy involves a request that the Court certify a class action.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiffs' residency is in Benton County, Arkansas, within the geographical boundaries of this Court.

## PARTIES, JURISDICTION AND VENUE

4.     Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extrajudicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

5.     MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

2

B-222

6.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

8.    Defendant MENU FOODS, INC. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey.

9.    Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are hereinafter referred to collectively as "Defendants" or "MENU."

10.    Upon information and belief, Defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME FUND, a business entity registered in and headquartered in Ontario, Canada. MENU provides principal development, exporting, financing, holding company, marketing, production, research and servicing for MENU animal food products in the United States, including canned and foil pouched dog and cat food.  MENU FOODS INCOME FUND is one of the largest animal food producing companies in the world, and MENU operates as one of the largest animal food companies in the United States,

3

B-223

whether measured by number of products produced and sold, revenues, or market capitalization.

11.    At all times herein mentioned, Defendants were engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

12.    Plaintiff CHARLES RAY SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, he was a resident of Rogers, in the State of Arkansas.

13.    Plaintiff PAMELA SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, she was a resident of Rogers, in the State of Arkansas.

14.    Plaintiffs CHARLES RAY SIMS and PAMELA SIMS were the owners of a family dog ("ABBY") at all times material to this complaint.

15.    This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

## CLASS ACTION ALLEGATIONS

16.    Defendant MENU manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States.    These consumers compose the putative class in this action and have rights that are substantially the same.

4

B-224

17.    Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

18.    The consumers composing the putative class in this action consist of: (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006 to the present.

19.    The consumers composing the putative class are so numerous that joinder of all members is impracticable; the questions of law or fact are common to all members of the class; the claims and defenses of Plaintiff SIMS are typical of the claims or defenses of the class; and Plaintiff SIMS will fairly and adequately protect the interests of the class.

20.    While the exact number and identities of the members of the class are unknown at this time, it is asserted that the class consists of thousands of persons. Upon further identification of the recipient class, class members may be notified of the pendency of this action by published class notice and/or by other means deemed appropriate by the Court.

21.    The sheer number of consumers composing the putative class are so numerous as to make separate actions by each consumer impractical and unfair and a

5

B 225

class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

22.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs SIMS are informed and believe that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action. There would be a failure of justice but for the maintenance of this class action.

## FACTUAL BACKGROUND

23.    Plaintiff's dog, ABBY, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

24.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product. Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

25.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff SIMS fed their dog, ABBY, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

B-226

26.    As a result of Plaintiffs SIMS feeding their dog, ABBY, the Product manufactured and distributed by Defendants, their dog developed severe health problems, including but not limited to anorexia, lethargy, diarrhea and vomiting.

27.    Plaintiffs SIMS took their dog, ABBY, to Dr. Eric P. Steinlage, at All Dogs Clinic, Rogers, Arkansas, who performed tests and surgery on the dog.

28.    Dr. Eric P. Steinlage determined that Defendants' Product was the cause of the dog's kidney failure and the dog died on March 16, 2007.

29.    Had Plaintiff SIMS known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed Defendants' product to their dog, ABBY, and the dog would not have suffered subsequent health complications and ultimately died before the age of two.

30.    Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

31.    Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper

7

B-222

warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

32.    Defendants' had notice and knowledge as early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product. As such, said consumers' dogs and cats, including Plaintiff's dog, ABBY, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

33.    Despite such knowledge, Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to warn the public in a timely manner, including Plaintiff, of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

34.    Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product, knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger, in order to advance their own pecuniary interests.

35.    Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like the SIMS, entitling these Plaintiffs to exemplary damages.

36.    Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff's dog, ABBY, and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct,

B-228

in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

37.    As a direct and proximate result of Defendants' negligence as described herein, Plaintiff SIMS sustained damages in the loss of their family pet.

## AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - FAILURE TO WARN

38.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

39.    Defendants manufactured, marketed, distributed, and supplied Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

40.    Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

41.    As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

42.    Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing,

9

B-229

conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

43. Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

44. Defendants knew and intended that Defendants' Product would be distributed through the United States without any inspection for defects.

45. Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

46. As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiffs suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of veterinary medical tests and treatment for their dog, ABBY, out-of-pocket costs of disposal/burial fees after the death of their dog, ABBY, as well as the pecuniary value.

47. Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiffs to punitive damages in an amount to be

B.230

determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

48. The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

49. Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

50. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

51. Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

52. The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

53. Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

11

B-231