**K**

C-444

Dockets.Justia.com

TRUJILLO RODRIGUEZ & RICHARDS, LLC
Donna Siegel Moffa, Esquire
Lisa J. Rodriguez, Esquire
8 Kings Highway West
Haddonfield, NJ 08033
TEL: (856)795-9002
FAX: (856)795-9887

BERGER & MONTAGUE, P.C.
Sherrie R. Savett, Esquire
Michael T. Fantini, Esquire
Russell D. Paul, Esquire
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action No. _____ |
| vs. | |
| Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation | COMPLAINT - CLASS ACTION JURY TRIAL DEMANDED |
| Defendants, | |

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Jared Workman, and Mark and Mona Cohen, by their attorneys, allege upon information and belief, the following:

1.    This class action is brought, and these proceedings instituted, to redress the harms resulting from the manufacture, production, and sale by Menu Foods Limited, Menu Foods Inc. and Menu Foods Midwest Corporation of dog and cat food marketed under over 90 brand names.

C-445

Plaintiffs make the following allegations, except as to the allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, based upon the investigation undertaken by Plaintiffs' counsel, which included, inter alia, review and analysis of Defendant's website, press releases, news articles, and pleadings filed in other suits.

### PRELIMINARY STATEMENT

2.      Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the parent company of Menu Foods Limited issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3.      The recalled pet food that Plaintiffs and Class members purchased and fed to their pets caused their pets to become ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4.      Plaintiffs here seek damages, injunctive relief, attorneys' fees, and costs against Defendants.

2

C-446

## PARTIES

5.     Plaintiff Jared Workman resides at 1150 Unit D, Monroe Drive, Boulder, CO, 80303. Plaintiff Workman purchased and fed his cat Iams pet food that was manufactured by Defendants during the Class Period. This cat, named Seth, became ill with kidney disease, was hospitalized, and subsequently died of acute renal failure. In addition to the cost of purchasing the contaminated food, Plaintiff Workman incurred economic costs in connection with the medical treatment and burial of his cat, as well as continuous medical monitoring of his other two cats.

6.     Plaintiffs Mark and Mona Cohen reside at 1415 Brighton Street, Philadelphia, PA 19111.  Plaintiffs purchased and fed their dog Iams pet food that was manufactured by Defendants during the Class Period. This dog, named Cookie, subsequently developed symptoms of acute renal failure. In addition to the cost of purchasing the contaminated food, the Cohens incurred economic costs in connection with the medical treatment and damage to personal property caused by their dog's illness.

7.     Defendant Menu Foods Limited is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N 1B1. Menu Foods Limited has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.

8.     Defendant Menu Foods Inc. is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110. Menu Foods Inc. has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Inc. is a wholly-owned subsidiary of  Menu Foods Limited and manufactures pet food for distribution in the United States.

3

C-442

9.     Defendant Menu Foods Midwest Corporation is a Delaware corporation, with its headquarters at PO Box 1046, 1400 East Logan Ave., Emporia, KS 66801. Menu Foods Midwest Corporation has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Limited and manufactures pet food for distribution in the United States.

10.     The events complained of occurred throughout the United States and in the State of New Jersey.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

12.     Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.

## STATEMENT OF FACTS

13.     Defendant Menu Foods Limited purports to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, Menu Foods Limited produced more than one billion containers of pet food.

14.     Defendant Menu Foods Limited is the parent company of, and wholly-owns, both

4

C-448

Defendant Menu Foods, Inc. ("MFI"), located in Pennsauken, New Jersey, and Defendant Menu Foods Midwest Corporation ("MFMC"), located in Emporia, Kansas. MFI and MFMC are two of Menu Food Limited's manufacturing facilities in the United States.

15.    At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and sold was free from contamination. More specifically, on March 16, 2007, the parent company of Menu Foods Limited issued a press release whereby it announced the recall of a portion of the dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Food Limited's facilities - MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16.    Reportedly, 60 million cans and pouches of the pet food were recalled.

17.    The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. A list of all brand names that were recalled is contained on the Company's website and is attached hereto as Addendum A. Retailers who sold the contaminated products include Ahold USA, Kroger Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18.    Menu Foods Limited acknowledges receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. The Company has discovered that timing of the production associated with these complaints coincides with the introduction of an ingredient from a new supplier.

19.    Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian,

5

C-449

said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, 7 animals died. Menu Foods announced its recall weeks later, on March 16, 2007.

20.    The FDA has reported that it received numerous calls and complaints from owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

21.    To date, there are 15 confirmed death. The FDA expects the death toll to rise.

22.    The FDA said that the investigation is focused on problems with wheat gluten, which Menu Foods Limited said had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

23.    Plaintiff Jared Workman owned a cat named Seth. During December 2006, Plaintiff Workman fed his cat Iams pet food, as well as other brand name cat foods which are now listed on the Company's recall list as contaminated products.

24.    In December 2006, Plaintiff Workman noticed that his cat, Seth, was acting strangely. He was lethargic and eating less than usual. Plaintiff called his cat veterinarian, who came to the house to perform blood work. The vet reported that Seth was dying of kidney failure. Plaintiff Workman then took Seth to an animal hospital in Greeley, Colorado. After several days in the hospital, it became clear that Seth was most likely suffering from acute renal failure. After about one week in the hospital, and despite constant medical treatment, Seth died.

25.    In addition to Plaintiff Workman suffering emotional distress from the loss of his cat, he spent approximately $2,500 in veterinarian bills and burial costs, which was not covered

6

C-450

by insurance. In addition, Plaintiff Workman spend almost $300 to have his other two cats tested, and will incur additional costs to have them continually monitored. In addition to these costs, Plaintiff Workman has not received any refunds for the cost of the contaminated pet food that he initially purchased. Finally, he estimates that it will cost him approximately $1,000 to purchase a new cat.

26.    Plaintiffs Mark and Mona Cohen own an 11 month old dog named Cookie that is a Yorkie-Bijain mix. Beginning January 2007, the Cohens' dog Cookie became violently ill with severe vomiting. The Cohens had been feeding Cookie Iams dog food.

27.    In January and February 2007, Cookie's condition worsened and Cookie developed symptoms of kidney disease, including vomiting, lethargy, excessive thirst, loss of appetite and dehydration. The Cohens took Cookie to the veterinarian on four separate occasions, including a midnight visit on February 9, 2007 to a veterinarian emergency room which required an x-ray at an additional cost of $300.

28.    Although the Cohens' suspected that the Iams food might be involved in Cookie's condition, they were assured by their salesperson at PetSmart that this was unequivocally not the case and that Cookie should not be switched to a different dog food. The Cohens, however, insisted a switch be made, and purchased, at the recommendation of their PetSmart salesperson, a dog food under the brand name Nutro. Both Iams and Nutro were manufactured and recalled by Defendants.

29.    Cookie is currently on an anti-nausea medication called Reglin and requires additional vetrinarian visits and monitoring of her kidney functions.

30.    In addition to suffering emotional distress, the Cohens have incurred the costs of

7

C-451

medical bills not covered by their pet insurance, prescription medication bills, damage to their personal property including rugs and carpets caused by their's pet's illness, and the costs of future medical monitoring of their dog.

31.    As a result of Defendants' wrongful actions, Plaintiffs and Class members have sick or deceased pets, and have suffered economic damages, including, but not limited to, the costs of the recalled pet food, the costs of medical treatment for their pets, burial costs, the costs to replace their pets, and the costs to replace or clean personal property damaged as a result of their pets' illnesses.

32.    In addition, their pets will require continuous medical monitoring to gauge the long-term effects of the contaminated pet food on their kidney functions and overall health. Therefore, because the precise impact on the health of class members' pets is not currently known, Plaintiffs and the Class seek the cost of medical monitoring for their pets.

CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.

34.    The class which Plaintiffs seek to represent are composed of all persons in the United States who purchased any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

35.    The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable. The disposition of their claims in a class action will benefit both the parties and the Court. Defendants have recalled 60 million cans of pet food that it sold

8

C-452

throughout the United States during the Class Period, and thus the Class is sufficiently numerous to make joinder impracticable, if not impossible.

36.    There are questions of fact and law which are common to all members of the class, including, inter alia, the following:

1.    Whether Defendants breached any express or implied warranties when they manufactured and sold the recalled pet food;

2.    Whether Defendants' negligently manufactured and sold the recalled pet food; and

3.    Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

37.    The above common issues of fact and law predominate over any arguable individualized issues.

38.    Plaintiffs' claims are typical of the claims of the other members of the class because Plaintiffs' and all of the Class members' damages arise from and were caused by having purchased and fed the recalled pet food to their pets. As a result, the evidence and the legal theories regarding Defendants' alleged wrongful conduct are identical for Plaintiffs and all of the Class members.

39.    Plaintiffs will fairly and adequately protect the interests of the members of the Class, and Plaintiffs have no interests which are contrary to or in conflict with those of the Class they seek to represent. Plaintiffs have retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

40.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the

9

C-453

class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiffs do not believe that any difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action. Plaintiffs believe and therefore aver that claims are small in relation to the costs of an individual suit, and a class action is the only proceeding pursuant to which Class members can, as a practical matter, recover. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.     Proper and sufficient notice of this action may be provided to the Class members through notice published in appropriate publications.

42.     Plaintiffs and the members of the Class have suffered irreparable harm and damages as a result of the Defendants' wrongful conduct as alleged herein. Absent representative action, Plaintiffs and the members of the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

### COUNT I - BREACH OF EXPRESS WARRANTY

43.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

44.     Defendants expressly warranted that the recalled brands of pet food were, in fact, ingestible food that was safe for consumption by dogs and cats.

45.     In addition, Defendants made numerous express warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods touts the claim that it "manufacture[s] the private-label wet pet-food industry's most comprehensive product program

10

C-454

with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

46.    Members of the Class were induced by Defendants' labeling, advertising and marketing the recalled brands of pet food as "food" to rely upon said express warranty, and did so rely in purchasing the recalled brands of pet food and feeding them to their pets.

47.    In reliance on Defendants' untrue warranties, Plaintiffs and the Class purchased the recalled pet food and fed that food to their pets.

48.    Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

### COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

49.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

50.    Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

51.    Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the recalled pet food, which was sold to Plaintiffs and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

11

C-455

52.    Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiffs and Class members would purchase the recalled pet food at issue for the ordinary purpose of feeding their pets.

53.    Defendants manufactured, labeled, advertised, sold, and distributed the recalled pet foods at issue for the ordinary purpose for which it was purchased by Plaintiffs.

54.    Plaintiffs and Class members purchased and used the recalled pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

55.    Plaintiffs and Class members relied upon Defendants' representations and claims in purchasing the recalled pet foods.

56.    The recalled pet foods purchased by Plaintiffs and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the recalled pet foods at issue.

57.    Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

### COUNT III - NEGLIGENCE

58.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

59.    Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

60.    Defendants breached said duty as described herein above when they failed to

12

C-456

adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiffs and members of the Class.

61.     As a proximate result of the Defendants' conduct described herein, Plaintiffs and members of the Class have suffered damages as a result and continue to suffer damages as a result.

### JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues triable by right before a jury.

### PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for judgment as follows:

1.     That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiffs and their counsel to represent the Class;

2.     That this Court enter judgment and award damages in favor of Plaintiffs and the Class, and against Defendants under the theories alleged herein;

3.     That this Court establish a fund for the medical monitoring of Plaintiffs' pets to discover and treat the extent of kidney damage these pets have suffered as a result of consuming Defendants' recalled pet food;

4.     That this Court award Plaintiffs all attorneys' fees, expenses and costs of this suit;

5.     That this Court award Plaintiffs pre-judgment and post-judgment interest at the maximum rate allowable by law, compounded daily; and

13

C-457

6.    That this Court grant such other, further, and different relief that the Court deems

necessary, just, and proper.

Dated: March 22, 2007                          Respectfully submitted,

                                               TRUJILLO RODRIGUEZ & RICHARDS, LLC


                                               By   /s Donna Siegel Moffa
                                                    Donna Siegel Moffa, Esquire
                                                    Lisa J. Rodriguez, Esquire
                                                    8 Kings Highway West
                                                    Haddonfield, NJ 08033
                                                    TEL: (856)795-9002
                                                    FAX: (856)795-9887


                                               BERGER & MONTAGUE, P.C.
                                               Sherrie R. Savett, Esquire
                                               Michael T. Fantini, Esquire
                                               Russell D. Paul, Esquire
                                               1622 Locust Street
                                               Philadelphia, PA 19103
                                               (215) 875-3000

                                               ROVNER, ALLEN, ROVNER ZIMMERMAN &
                                               NASH
                                               Robert A. Rovner, Esquire
                                               Jeffrey I. Zimmerman, Esquire
                                               175 Bustleton Pike
                                               Feasterville, PA 19053-6456
                                               (215) 698-1800

                                               Attorneys for Plaintiffs and the Class

14

C-458

Schedule A

Recalled Menu Foods' Pet Food Brands[1]

---

[1]     http://www.menufoods.com/recall/product_cat.html, accessed March 21, 2007;
http://www.menufoods.com/recall/product_dog.html, accessed March 21, 2007.

15

C-459



**MENU FOODS INCOME FUND**

---

**Home**

**Recall Information**

Press Release

Cat Product Information

Dog Product Information

Menu Foo
8 Falconer
Streetsvill
Canada LI

## Recalled Dog Product Information
### Recall Information 1-866-895-2708

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Meijers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws
32. Pet Essentials
33. Pet Pride - Good n Meaty
34. Presidents Choice
35. Price Chopper
36. Priority Canada
37. Priority US

C-460

38. Publix
39. Roche Brothers
40. Save-A-Lot
41. Schnucks
42. Shep Dog
43. Springsfield Prize
44. Sprout
45. Stater Brothers
46. Stop & Shop Companion
47. Tops Companion
48. Wegmans Bruiser
49. Weis Total Pet
50. Western Family US
51. White Rose
52. Winn Dixie
53. Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

C – 461





Home
**Recall Information**
Press Release
Cat Product Information
Dog Product Information

## Recalled Cat Product Information

### Recall Information 1-866-895-2708

Menu Foo
6 Falcone
Streetsvill
Canada L!

1.  Americas Choice, Preferred Pets
2.  Authority
3.  Best Choice
4.  Companion
5.  Compliments
6.  Demoulas Market Basket
7.  Eukanuba
8.  Fine Feline Cat
9.  Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat
32. Special Kitty Canada
33. Special Kitty US
34. Springfield Prize
35. Sprout
36. Stop & Shop Companion
37. Tops Companion

C-462

38. Wegmans
39. Wals Total Pet
40. Western Family US
41. White Rose
42. Winn Dixie

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

C-463

**L**

C-464

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Lauri A. Osborne, Individually and On Behalf of All Others Similarly Situated, )

                    Plaintiff, )

    vs. )

MENU FOODS, INC. )

               Defendant. )

)

No. 3.07c. 469 (RNC)

**307CV00469  RNC**

<u>CLASS ACTION</u>

<u>DEMAND FOR JURY TRIAL</u>

## CLASS ACTION COMPLAINT

Plaintiff Lauri A. Osborne brings this class action complaint against Menu Foods, Inc. ("Menu Foods") to seek redress for herself and other individuals injured by its sale of contaminated pet food throughout the United States.

### NATURE OF THE CASE

1.     Menu Foods, one of the largest pet food manufacturers in the world, recently issued a mass recall of 42 brands of cat food and 51 brands of dog food.

2.     That recall was issued belatedly as a result of evidence that the pet food in question was contaminated with a potentially lethal agent.

3.     When ingested by an animal, the contaminated pet food can cause immediate renal failure, resulting in complete shutdown of the animal's kidneys and, ultimately its death.

4.     Menu Foods' actions in selling the contaminated food and failing to issue the recall sooner were reckless and in breach of its duties and warranties to its customers.

C-465

5.    Those actions were a proximate cause of injury to and the deaths of currently untold numbers of pets, including plaintiff Lauri A. Osborne's cats, as described more fully below.

6.    On behalf of a nationwide class, Lauri A. Osborne seeks redress for that misconduct.

## PARTIES

7.    Plaintiff Lauri A. Osborne is a citizen of Connecticut, residing in Terryville, Litchfield County, CT.

8.    Defendant Menu Foods is the self-proclaimed "leading manufacturer of private-label wet pet food in North America." It is a New Jersey Corporation with its principal place of business in New Jersey. It does business throughout the United States and throughout Connecticut. It also has offices in Ontario, Canada.

## JURISDICTION

9.    The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. § 1332 (a) because (a) plaintiff and numerous members of her putative class are citizens of states different from those of which Menu Foods is a citizen; (b) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (c) none of the jurisdictional exceptions contained in 28 U.S.C. § 1332 (d)(4)-(5) applies to the instant action.

## VENUE

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). The Defendant transacts business in this District, and many of the acts constituting the violations of law alleged herein occurred in this District.

C-466

## FACTS

11.    Menu Foods holds itself out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

12.    It makes numerous express warranties about the quality of its food and its manufacturing facilities.

13.    For example, Menu Foods touts the claim that it "manufacture[s] the private label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

14.    Menu Foods intended for pet owners to believe its statements and trust that its pet food is of first-rate quality.

15.    On or about March 16, 2007, Menu Foods announced a recall of approximately 42 brands "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Foods' facility in Emporia, Kansas, between December 3, 2006 and March 6, 2007.

16.    Weeks before the recall, Menu Foods had received numerous complaints indicating that pet food originating from the Emporia plant was killing pets.

17.    As a result of these complaints, Menu Foods tested its food on approximately 40 to 50 pets. Seven of those pets died after ingesting the food.

18.    Despite having actual knowledge of both the complaints it received and its own study, Menu Foods delayed for weeks before issuing the notice of recall.

19.    Even then, its recall was conducted in a negligent manner. For example, both its website and the toll-free number it provided to the public were frequently non-operational.

## FACTS RELATING TO THE NAMED PLAINTIFF

20.     On or about February 25, 2007 Plaintiff purchased a 24 can variety pack of IAMS adult cat food from a Walmart store for her thriteen year-old cat, Gizmo, her thirteen year-old cat, Ziggy, and her eleven year-old cat, Oreo.

21.     Menu Foods is the manufacturer of IAMS adult cat food.

22.     On or about March 4, 2007, shortly after ingesting Menu Food's cat food, Gizmo went into renal failure. Gizmo's kidneys shut down, and on March 5, 2007, she had to be put down.

23.     Osborne incurred over $1,200 in veterinary expenses relating to the attempts to save Gizmo's life and, in addition, to save her other cats. Specifically, another 13 year-old cat, Ziggy has been ill with problems since ingesting the same food, and Oreo, an 11 year-old cat owned by Osborne has also been sick.

24.     Gizo had been with Osborne's family since 1994.

25.     The loss of Gizmo and illness to her other pets has been devasting to Osborne.

## CLASS ALLEGATIONS

26.     Osborne brings this action, pursuant to FRCP 23(b)(3), on behalf of herself and a class (the "Class") consisting of herself and all others who purchased pet food in the United States that was ultimately subject to the March 16, 2007 Menu Foods recall.

27.     Upon information and belief, there are over 100,000 members of the Class such that joinder of all members is impracticable.

28.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting individual members. Common questions for the Class include:

C-468

(a)    Did Menu Foods act negligently in failing to prevent contamination of its pet food?

(b)    Did Menu Foods act negligently in failing to warn its customers in a timely and effective manner of the danger of its pet food?

(c)    Did Menu Foods' breach express and/or implied warranties relating to the sale of its pet food?

29.    Osborne will fairly and adequately protect the interests of the Class, her claims are typical of the claims of the members of the class, and she has retained counsel competent and experienced in class action litigation.

30.    A Class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the class in impracticable, and (b) many members of the class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

## COUNT I

### (Breach of Warranties)

31.    Plaintiff incorporates by reference the foregoing allegations.

32.    Menu Foods breached express warranties to Plaintiff and violated the Uniform Commercial Code.

33.    Menu Foods breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

34.    Menu Foods breached the implied warranty of merchantability.

C-469

35.    As a proximate cause of this misconduct, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

## COUNT II

### (Negligence)

36.    Plaintiff incorporates by references the foregoing allegations.

37.    Menu Foods owed its customers a duty to offer safe, non-contaminated products in the stream of commerce.

38.    Menu Foods breached this duty by failing to exercise care in the producing, processing, manufacturing and offering for sale of the contaminated per food described herein.

39.    Menu Foods further breached this duty by failing timely and effectively to warn plaintiff and the class of contamination even after it had actual knowledge of that fact and of the resulting risks.

C-490

40.    As a proximate cause thereof, plaintiff and her class suffered actual damages, including without limitation the cost of the contaminated pet food and any resulting veterinary bills.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1.    An order certifying the Class defined above;

2.    An award of actual damages;

3.    Appropriate injunctive relief;

4.    Medical monitoring damages;

5.    Reasonable attorney's fees and costs; and

6.    Such further and other relief the Court deems appropriate.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

March 26, 2007                                   By: _____

Bruce E. Newman
NEWMAN, CREED & ASSOCIATES
99 North Street, Route 6
P.O. Box 575
Bristol, CT 06011-0575
(860) 583-5200
Federal Bar No.: 12301

C-491

M

C-422

03/26/2007 13:42 FAX 916 568 7890          WEXLER TORISEVA WALLACE                    ☑002/017



1   **WEXLER TORISEVA WALLACE LLP**
    MARK J. TAMBLYN (State Bar No. 179272)
2   Email: mjt@wtwlaw.us
    1610 Arden Way, Suite 290
3   Sacramento, California 95815
    Telephone: (916) 568-1100
4   Facsimile: (916) 568-7890

5   **KERSHAW, CUTTER, & RATINOFF, LLP**
    STUART C. TALLEY (State Bar No. 180374)
6   E-mail: stalley@kcrlegal.com
    980 9th Street, 19th Floor
7   Sacramento, California 95814
    Telephone: (916) 448-9800
8   Facsimile: (916) 669-4499

9   [Additional Counsel Listed on Signature Page]

10  Attorneys for *Plaintiff*

11

12          **IN THE UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14
    SHIRLEY SEXTON, on behalf of       Case No.   **CV07-01958 GHK (JWJ)**
15  herself and all others similarly
    situated,
16                                     **CLASS ACTION COMPLAINT**
                Plaintiff,
17
         v.
18
    MENU FOODS INCOME FUND,
19  MENU FOODS, INC., a New
    Jersey corporation, and MENU
20  FOODS MIDWEST
    CORPORATION, a Delaware            **JURY TRIAL DEMANDED**
21  corporation,

22              Defendants.

23

24

25

26

27

28

                              -1-
                    **CLASS ACTION COMPLAINT**

C-403

1    Plaintiff Shirley Sexton ("Plaintiff"), individually and on behalf of all others

2  similarly situated, alleges by and through her attorneys, upon information and

3  belief, as follows:

4                          **NATURE OF THE ACTION**

5      1.    Plaintiff brings this class action on behalf of herself and a class of

6  consumers and entities who purchased brands of pet food manufactured by

7  Defendants that caused pets to suffer severe illness or death. Pet owners, believing

8  Defendants' products to be safe for pet consumption, incurred substantial expenses

9  relating to the purchase of the pet food and to the veterinary monitoring and

10  treatment that became necessary after their pets consumed Defendants' pet food.

11  Such expenses were even more extreme for those pet owners whose pets became

12  terminally ill after consuming Defendants' pet food products. Such costs arose and

13  were exacerbated by the undue amount of time taken by Defendants to announce

14  the dangers associated with its dog and cat foods. Although Defendants knew that

15  pet illnesses and deaths could be related to their pet foods, Defendants waited for

16  nearly a month before telling the public and the Food and Drug Administration

17  (FDA) that it was recalling its products. Defendants' lethal products, and the

18  companies' excessive delay in warning consumers and regulatory agencies as to its

19  dangers, resulted in significant financial loss to thousands of pet owners.

20                          **JURISDICTION AND VENUE**

21      2. The Court has original jurisdiction over this class action pursuant to 28

22  U.S.C. § 1332(d)(2).

23      3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1)

24  because Plaintiff resides in this judicial district. Venue is also proper pursuant to

25  28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving

26  rise to the claim occurred in this judicial district.

27      4. The members of the putative Class have suffered aggregate damages

28  exceeding $5,000,000, exclusive of interest and costs.

C-424

## PARTIES

5.  Plaintiff Shirley Sexton is a resident of Los Angeles County, California.

6.  Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7.  Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110.

8.  Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801.  Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods, Inc.

9.  Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other.  In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

11.  Defendants manufacture and sell pet food internationally and are the biggest supplier of pet food in North America.

12.  Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

13.  Defendants sell their brands internationally and in some of the largest

-3-
CLASS ACTION COMPLAINT

C-475

03/26/2007   13:43     916 568 7890
03/26/2007 13:43 FAX  916 568 7890      WEXLER TORISEVA WALLACE                    ☒005/017

1   major retail chains in the United States, such as Wal-Mart, Safeway, Kroger,

2   PetSmart and Meijer.

3        14.  On March 16, 2007, Defendants, in conjunction with the Food and Drug

4   Administration (FDA), announced a massive immediate recall of approximately 60

5   million containers of "cuts and gravy" pet food (pet food consisting of pieces of

6   meat in gravy) throughout the United States based on widespread reports of pet

7   illness and death, mostly related to kidney failure.  The recall covers all "cuts and

8   gravy" we pet food produced and distributed by Defendants, including over ninety

9   different brands of dog and cat food.  Some of the brands recalled include, Iams,

10  Eukanuba, Best Choice, Paws, and Nutro Max.  Defendants' recall is the largest pet

11  food recall in United States history.

12       15.  However, Defendants waited an excessive period of time before deciding

13  to recall its harmful and lethal products.  Defendants first started receiving

14  complaints of pet illnesses and deaths as early as late-February, almost a full month

15  before deciding to recall its products.  *See, e.g.,* CBSNews.com, *Pet Food Co.*

16  *Knew of Problem Last Month,* March 20, 2007, *at*

17  http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last

18  viewed March 22, 2007).  Rather than announcing its products could be harmful to

19  pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct

20  its own testing.  Defendants conducted tests involving over 50 animals to observe

21  reactions to its pet foods.  Approximately one in six of the animals tested died.  Yet,

22  Defendants again waited until as many as seven test subjects died after eating its pet

23  food before finally submitting its findings to the FDA and deciding that a recall and

24  announcement to the public would be necessary.

25       16.  Due in no small part to this unnecessary and protracted delay, as of

26  March 21, 2007 there have been at least seventy-two reported pet deaths from

27  kidney failure nationwide and additional deaths continue to be reported by the hour.

28  One source indicated that 1,715 dogs and cats were either sick or dead as a result of

C-416

03/26/2007  13:43    916 568 7890
03/26/2007 13:43 FAX  916 568 7890        WEXLER TORISEVA WALLACE                    @006/017

1  the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed

2  March 22, 2007).

3      17.  Pet owners purchased Defendants' products believing them to be safe for

4  pet consumption and beneficial to their pets.  However, the "cuts and gravy" style

5  pet food that pet owners across the nation have fed their pets has proved to be toxic,

6  causing renal failure in cats and dogs as well as physical disorders such as

7  dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

8      18.  Pet owners have incurred substantial expenses relating both to the

9  purchase of Defendants' pet food and from the medical costs associated with

10  monitoring and treating pets who have consumed, or were thought to have

11  consumed, Defendants' contaminated food products.  Indeed, several pet owners

12  have accrued veterinary bills that have climbed into the several thousands of

13  dollars.  Furthermore, for those pet owners whose pets became terminally ill, they

14  were forced to incur additional costs relating to their pets death, such as euthanizing

15  and, for some, burying or cremating their pet.

16      19.  Currently, Defendants still have not identified the cause of the food

17  toxicity.  However, aminopterin, a substance found in rat poisons, was recently

18  discovered in the recalled foods.

19      20.  In addition, pet owners who have become increasingly concerned about

20  their pet's health after learning of the recall have received little to no relief from

21  Defendants.  Defendants have failed to manage the high volume of incoming

22  complaints.  Since instituting the recall, pet owners have been largely unable to

23  reach Defendants' customer service representatives, often encountering busy

24  signals or voicemail messages.  *See, e.g.,* Thejournalnews.com, *Pet Owners*

25  *Growling over Food Recall*, March 20, 2007, *at*

26  http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS

27  01/703200345/1066 (last viewed March 22, 2007).  To be sure, Defendants have

28  been criticized for not being cooperative with customers, for not getting helpful

C-477

1    information out to the public sooner and for failing to "get control of the crisis . . .

2    employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-

3    Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available*

4    *at* http://www.nj.com/starledger/stories/index.ssf?/base/business-

5    6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

6         21.  Since the recall, Defendants have received scores of complaints and

7    questions from consumers who have purchased its contaminated pet food products

8    and from those whose pets have become ill or died after consuming those products.

9         22.  The complaints found throughout the Internet and in many of the news

10   stories mentioned above each contain the same common theme of consumers who

11   unwittingly purchased Defendants' food products and who were forced to take their

12   pets to veterinarians for medical treatment after their pets became extremely, and

13   sometimes terminally ill.

14        23.  Plaintiff Shirley Sexton regularly purchased *Special Kitty* brand wet pet

15   food from Wal-Mart Stores, Inc. before the recall was announced.

16        24.  Four cats lived in Ms. Sexton's household. Two of Ms. Sexton's three

17   cats, Red and Kelso, ate the *Special Kitty* pet food every day. Spike, a cat

18   belonging to Ms. Sexton's daughter, also ate *Special Kitty* pet food on a daily basis.

19        25.  On or March 16 and March 17, 2007, Shirley noticed that both Red and

20   Kelso were ill. She took Red and her two other cats in to the veterinarian. Two of

21   the three cats, including Kelso, were initially found to be healthy. However, the

22   veterinarian discovered Red had kidney failure and decided to keep Red overnight.

23   On March 20, 2007, the veterinarian determined that Red's condition had

24   significantly worsened and Ms. Sexton, in order to spare her pet from suffering any

25   further, made the decision to have Red euthanized that same day.

26        26.  After her experience with Red, Ms. Sexton also brought her daughter's

27   cat, Spike, to the veterinarian for testing. The veterinarian determined that Spike –

28   who also ate Wal-Mart's *Special Kitty* brand food – was suffering from kidney

-6-
CLASS ACTION COMPLAINT

C-408

1    failure. As of the date of this complaint, Spike remains in the veterinary hospital.

2       27. To date, Ms. Sexton has incurred at least $1,100 in veterinary bills.

3                 **CLASS ACTION ALLEGATIONS**

4       28. Plaintiff brings this action as a class action pursuant to Federal Rule of

5    Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated

6    as members of the following class (the "Class"): All persons and entities that

7    purchased "cuts and gravy" style dog or cat food manufactured, distributed,

8    marketed and/or sold by Defendants.

9       29. Subject to additional information obtained through further investigation

10    and discovery, the Class definition may be expanded or narrowed by amendment or

11    amended complaint. Specifically excluded from the proposed Class are business

12    entities for purposes of Plaintiff's claim for relief under the California Consumers

13    Legal Remedies Act, Civil Code § 1750, *et seq.* Also specifically excluded are

14    Defendants, their officers, directors, agents, trustees, parents, children,

15    corporations, trusts, representatives, employees, principals, servants, partners, joint

16    venturers, or entities controlled by Defendants, and their heirs, successors, assigns,

17    or other persons or entities related to or affiliated with Defendants and/or their

18    officers and/or directors, or any of them; the Judge assigned to this action, and any

19    member of the Judge's immediate family.

20       30. **Numerosity**. The members of the Class are so numerous that their

21    individual joinder is impracticable. Plaintiff is informed and believes, and on that

22    basis alleges, that the proposed class contains tens of thousands of members. The

23    precise number of Class members is unknown to Plaintiff. The true number of

24    Class members are known by Defendants, however, and thus, may be notified of

25    the pendency of this action by first class mail, electronic mail, and by published

26    notice.

27       31. **Existence and Predominance of Common Questions of Law and**

28    **Fact**. Common questions of law and fact exist as to all members of the Class and

C-409

predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b.    Whether Defendants failed to properly test their "cuts and gravy" style dog and cat food before market entry of such food;

    c.    Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of its "cuts and gravy" style dog and cat food;

    d.    Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

    e.    Whether Defendants' conduct constituted unlawful, unfair, or fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq., as alleged herein;

    f.    Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein;

    g.    Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages; and

    h.    Whether Plaintiff and members of the Class are entitled to punitive damages, and, if so, in what amount.

32.  **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

33.  **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests

C-480

b.   In violation of Section 1770(a)(5) of the CLRA, Defendants
     represented that its goods or services sponsorship, approval,
     characteristics, uses or benefits which they do not have.

43.  Defendants engaged in these unfair or deceptive acts and practices with
the intent that they result, and which did result, in the sale of dog and cat food to
Plaintiff and the Class.

44.  In engaging in unfair or deceptive conduct in violation of the CLRA,
Defendants actively concealed and intentionally failed to disclose material facts
about the characteristics of their dog and cat food, and further represented that such
food was suitable for pet consumption.

45.  As a result of Defendants' acts and practices as alleged in this
Complaint, Plaintiff seeks an Order enjoining Defendants from continuing to
engage in unlawful, unfair or fraudulent business practices, and any other act
prohibited by law.  Plaintiff has contemporaneous with this filing provided notice to
Defendants, and will amend to add claims for damages under the CLRA if
Defendants do not take appropriate corrective action.

## SECOND CLAIM FOR RELIEF
### [Negligence]

46.  Plaintiff hereby incorporates by reference each of the preceding
allegations as though fully set forth herein.  Plaintiff asserts this claim against each
and every Defendant on behalf of herself and the Class.

47.  Defendants owed a duty to Plaintiff and the Class to provide pet food
safe and suitable for pet consumption.

48.  Through their failure to exercise due care, Defendants were negligent in
manufacturing, distributing, marketing and selling pet food to Plaintiff and the
Class.

49.  Defendants failed to implement adequate quality control and adequate
testing of its pet food that they introduced into the stream of commerce for sale to
Plaintiff and the Class and for consumption by their pets.

-11-
CLASS ACTION COMPLAINT

C-481

50. Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

51. The losses and damages described herein were foreseeable and avoidable.

52. Defendants' negligence proximately caused the losses and damages to Plaintiff and the Class.

## THIRD CLAIM FOR RELIEF
### [Violation of the California Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*]

53. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

54. Defendants' acts and practices, described herein, constitute unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200 *et seq* ("UCL").

55. The utility of Defendants' manufacturing, distribution, marketing and/or sale of contaminated dog and cat food is significantly outweighed by the gravity of the harm they impose on Plaintiff and the Class. Defendants' acts and practices are oppressive, unscrupulous or substantially injurious to consumers.

56. The above-described unfair, unlawful and fraudulent business practices conducted by Defendants present a threat and likelihood of harm and deception to members of the Class in that Defendants have systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

57. Plaintiff and the Class have suffered harm as a proximate result of the wrongful conduct of the Defendants alleged herein, and therefore bring this claim for relief for restitution and disgorgement. Plaintiff is a person who has suffered

C-4f2

1  injury in fact and has lost money and property as a result of such unfair

2  competition.

3      58.  Pursuant to Business and Professions Code sections 17200 and 17203,

4  Plaintiff, on behalf of herself and the Class, seeks an order of this Court: enjoining

5  Defendants from continued manufacture, distribution, marketing and sale of "cuts

6  and gravy" style dog and cat food in an unfair, unlawful and fraudulent manner, and

7  an order enjoining Defendants from collecting money from the Class from the sale

8  of pet food.  Plaintiff further requests an order awarding Plaintiff and the Class

9  restitution and disgorgement of profits acquired by Defendants by means of such

10  unlawful acts and practices, so as to deter Defendants and to rectify Defendants'

11  unfair and unlawful practices and to restore any and all monies to Plaintiff and the

12  Class, which are still retained by Defendants, plus interest and attorneys' fees and

13  costs pursuant to, *inter alia*, Code of Civil Procedure section 1021.5.

### FOURTH CLAIM FOR RELIEF
### [For Unjust Enrichment]

16      59.  Plaintiff hereby realleges and incorporates by reference all paragraphs

17  previously alleged herein.  Plaintiff asserts this claim against each and every

18  Defendant on behalf of herself and the Class.

19      60.  Defendants have received, and continue to receive, a benefit at the

20  expense of Plaintiff and members of the Class.  Defendants have knowledge of this

21  benefit.

22      61.  Defendants have charged and collected from consumers, including

23  Plaintiff and members of the Class, money for dog and cat food that endangers the

24  lives of their pets.  Defendants thus have received benefits that they have unjustly

25  retained at the expense of Plaintiff and members of the Class.

26      62.  As a direct and proximate result of Defendants' unlawful acts and

27  conduct, Plaintiff and members of the Class were deprived of the use of their

28  monies that was unlawfully charged and collected by Defendants, and are therefore

C-4&3

03/26/2007  13:45    916 568 7890
03/26/2007 13:45 FAX  916 568 7890        WEXLER TORISEVA WALLACE                    ☒ 015/017

1    entitled to restoration of their monies.

2

### FIFTH CLAIM FOR RELIEF
3    [Breach Of Express Warranty]

4        63. Plaintiff hereby realleges and incorporates by reference all paragraphs

5    previously alleged herein. Plaintiff asserts this claim against each and every

6    Defendant on behalf of herself and the Class.

7        64. Defendants expressly warranted that their "cuts and gravy" style pet food

8    was suitable and safe for pet consumption.

9        65. Defendants also expressly warranted that "it manufacturer[s] the private-

10   label wet pet-food industry's most comprehensive product program with the highest

11   standards of quality."

12       66. Plaintiff and the Class were induced by Defendants' marketing,

13   advertising, promotion and labeling of the pet food as suitable "food" to rely upon

14   such express warranty, and, in fact, relied upon the untrue warranty in purchasing

15   the recalled pet food and feeding it to their pets.

16       67. Plaintiff and the Class were damaged as a proximate result of

17   Defendants' breach of their express warranty.

18
### SIXTH CLAIM FOR RELIEF
19   [Breach Of Implied Warranty]

20       68. Plaintiff hereby realleges and incorporates by reference all paragraphs

21   previously alleged herein. Plaintiff asserts this claim against each and every

22   Defendant on behalf of herself and the Class.

23       69. Defendants are merchants under section 2-104 and 2-314 of the Uniform

24   Commercial Code.

25       70. Through their marketing, advertising, promotion and labeling of their

26   "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food

27   was fit for the ordinary purpose for which it was intended, including to safely

28   nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform

-14-
CLASS ACTION COMPLAINT

*C-484*

03/26/2007   13:45    916 568 7890
03/26/2007 13:46 FAX  916 568 7890        WEXLER TORISEVA WALLACE                    ☒016/017

1    Commercial Code.

2         71.  Through their marketing, advertising, promotion and labeling,

3    Defendants knew that Plaintiff and the Class would purchase their pet food for the

4    ordinary purpose of providing nourishment to their pets.

5         72.  Defendants manufactured, distributed, marketed, advertised, promoted

6    and sole their pet food for the ordinary purpose for which it was purchased by

7    Plaintiff and the Class.

8         73.  Plaintiff and the Class relied upon Defendants' representations and

9    warranties, and purchased and used Defendants' pet food for the ordinary purpose

10   for which it was sold.

11        74.  Defendants' pet food purchased by Plaintiff and the Class were unfit for

12   their ordinary purpose when sold.  Such food was sold while presenting a risk of

13   risk of illness or death to pets.  Defendants have accordingly breached the implied

14   warranty of merchantability by selling such unfit pet food.

15        75.  Plaintiff and the Class were damaged as a proximate result of

16   Defendants' breach of warranty.

17                          **PRAYER FOR RELIEF**

18        **WHEREFORE**, Plaintiff, on behalf of herself and all others similarly

19   situated, prays for judgment against Defendants as follows:

20        1.      For an order certifying the Class under Rule 23 of the Federal Rules of

21                Civil Procedure and appointing Plaintiff and her counsel of record to

22                represent the Class;

23        2.      For restitution, disgorgement and/or other equitable relief as the Court

24                deems proper;

25        3.      That pursuant to sections 17203 and 17204 of the Business and

26                Professions Code, Defendants be permanently enjoined from

27                performing or proposing to perform any of the aforementioned acts of

28                unfair, unlawful and fraudulent business practices;

                                    -15-
                          CLASS ACTION COMPLAINT

C-4f5

4.    For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

5.    For punitive damages pursuant to Civil Code § 1780(a)(4);

7.    For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

8.    For pre-judgment and post-judgment interest;

9.    For reasonable attorneys' fees and costs of suit, including expert witness fees; and

10.    For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated: March 26, 2007          **WEXLER TORISEVA WALLACE LLP**

By _____
        Mark J. Tamblyn

1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*

-16-
CLASS ACTION COMPLAINT

C-486